William Frank PARKER *v.* STATE of Arkansas

CR 88-95                                            779 S.W.2d 156

Supreme Court of Arkansas
Opinion delivered November 6, 1989

*Howard L. Slinkard, P.A.,* for appellant.

*Steve Clark*, Att'y Gen., by: *Jack Gillean*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. This is the second time the *Parker* case has been before this court. On November 12, 1985, Parker was convicted of two counts of capital felony murder, two counts of attempted first degree murder, two counts of burglary, kidnap-

ping and attempted capital murder. He received the death penalty for two counts of capital felony murder for causing the deaths of James and Sandra Warren in the course and furtherance of a burglary. This court reversed the capital murder convictions finding that the Warrens' murders were not caused in the course of or furtherance of a burglary, but that Parker went into the Warrens' home for one purpose—to murder them. *Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987). Only the capital murder convictions were reversed, the other convictions were affirmed, and the capital murder convictions were severed.

On retrial, the appellant was charged pursuant to Ark. Code Ann. § 5-10-101(a)(4) (Supp. 1987)—a person commits capital murder if with premeditated and deliberated purpose of causing the death of any person, he causes the death of two (2) or more persons in the course of the same criminal episode. Acting pro se with the assistance of two attorneys present at trial, the appellant was again convicted of capital murder and given the death penalty. The appellant argues eight points for reversal. We find no merit in any of them, therefore we affirm.

Appellant first argues that our reversal of his first capital felony charge amounted to a finding that the prosecution failed to prove an essential element of the offense, *viz.*, that the deaths occurred in the course of a burglary. As a consequence, he claims that, under the rationale of *Burks* v. *United States*, 437 U.S. 1 (1978), the double jeopardy clause precluded a second trial because the conviction was effectively reversed based upon the state's failure to produce sufficient evidence to sustain a guilty verdict.

■■ The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. *Burks*, 437 U.S. 1. However, there has been a distinction made between trial error and evidentiary insufficiency; trial error does not bar retrial under double jeopardy. *Id.* Appellant here mistakes evidentiary insufficiency with trial error. *See Sellers* v. *State*, 300 Ark. 280, 778 S.W.2d 603 (1989); *see also Montana* v. *Hall*, 481 U.S. 400 (1987). Trial error does not constitute a decision to the effect that the government has failed to prove its case and implies nothing with respect to guilt or innocence of the

defendant. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984) (quoting *Burks* v. *United States*, 437 U.S. 1, 15). Here, the trial error was in charging and trying Parker under the wrong capital murder provision. In the first *Parker* case, we stated that Parker could have been charged under Ark. Code Ann. § 5-10-101(a)(4)—the capital murder provision with which the state charged and convicted him at his second trial. When holding Parker had been convicted under an improper provision, we never suggested insufficient evidence existed to prove he committed capital murder if charged and convicted under the correct law.

At the second trial, appellant was correctly charged with the premeditated and deliberated purpose of causing the death of any person, he causes the death of two or more persons in the course of the same criminal episode. In our earlier *Parker* decision, we set out the facts surrounding the murders committed by the appellant. Suffice it to say, the state proved appellant shot at Cindy Warren but missed. Then, he chased Cindy's father into the Warren House where appellant shot and killed Cindy's parents, Mr. Warren and his wife, Sandra. In sum, the state at the second trial corrected its error by charging and convicting the appellant under capital murder provision § 5-10-101(a)(4), and the evidence was unquestionably sufficient to sustain the jury's guilty verdict under that charge.

In his second issue, appellant urges the trial court erred in allowing the state to refer to events which occurred after the murders of Mr. Warren and his wife. Immediately after killing the Warrens, appellant located his former wife, Pam Warren, at her residence, kidnapped her and later shot her and a policeman at the police station where he kept Pam hostage. Appellant was convicted of these crimes committed subsequent to the killing of the Warrens and those convictions were affirmed in the first *Parker* appeal. At the second trial, appellant argued that those subsequent events (crimes) should have been excluded under A.R.E. Rules 403 and 404(b). The trial court admitted the state's evidence, but in doing so, admonished the jury that it could consider the evidence only for determining whether "the appellant had a state of mind sufficient to constitute the crime with which he was charged," *viz.*, the capital murders of the Warrens. The trial court was correct.

Rule 404(b) provides that the evidence of other crimes, wrongs, or acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In the present case, the theory of the state's case was that the appellant planned to kill the entire Warren family. The state developed its case to show the appellant's intent to kill Mr. and Mrs. Warren was precipitated because of his domestic troubles with the Warrens' daughter, Pam. The record reveals appellant had married Pam and the relationship was beset with troubles related to his involvement in drugs. The state showed that Pam had divorced the appellant, and as a consequence, the appellant ended up terrorizing not only Pam but her sister, Cindy, and her parents, who had favored Pam's separation from the appellant. The state's evidence painted a picture of a series of terroristic acts and threats towards each member of the Warren family. Immediately after the appellant killed Mr. and Mrs. Warren and his attempt to do the same to Cindy, the appellant went to where Pam lived and forced her to go with him to the police station, where he shot a police officer. The testimony reveals he held Pam as a hostage and requested that Cindy Warren be brought to him. During this time, he had also shot Pam in the abdomen and told her that he had killed her parents. When he was arrested, the appellant possessed the same automatic gun used in his shooting of the Warrens and he wore the same army camouflage or combat clothing he had changed into before going to the Warrens to kill them.

These events following the killing of the Warrens were extremely probative in that they revealed not only that the appellant killed the Warrens but also that he had planned to kill the entire Warren family and that he induced the hostage situation in an effort to get both Pam and Cindy at the police station so he could consummate his plan. We also believe the events following the Warrens' killings were admissible because the entire sequence of events was such an inseparable whole that the state was entitled to prove the entire criminal episode. *See Thomas v. State*, 273 Ark. 50, 615 S.W.2d 361 (1981); *Russell v. State*, 262 Ark. 447, 559 S.W.2d 7 (1977); *Harris v. State*, 239 Ark. 771, 394 S.W.2d 135 (1965).

In his third point for reversal, appellant cites *Ake v. Oklahoma*, 470 U.S. 68 (1985) and argues he was denied the

assistance of a psychiatrist in preparing his defense.[1] In *Ake*, the Court held that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the state must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation and presentation of the defense. Appellant made no such demonstration in the present case.

At his first trial, appellant raised mental disease or defect as an affirmative defense, but he failed to do so at his second trial. On a number of occasions, the appellant, acting pro se, stated that he had no intention of raising a sanity defense but that he thought "duress is a form of mental illness." He later added, "Is not duress a mitigating circumstance, under the influence?" While the record reads in a somewhat disjointed fashion (largely due to the manner in which the appellant represented himself), it is clear that the appellant intended to raise his mental condition as a mitigating factor at the penalty phase of his trial; towards that end, he presented Dr. Oglesby, a psychiatrist with the Department of Correction, as a witness.[2] Consistent with his earlier declaration that he did not intend to raise mental disease or defect as a defense during the guilt phase of his trial, he called Dr. Oglesby as a witness only at the penalty phase. From our careful examination of the record, we confirm the trial court's finding that the appellant failed to raise the sanity defense or to show that his sanity at the time of the offense was a significant factor at trial. Because appellant made no effort to offer a sanity defense at the guilt phase of the trial and he was permitted to offer considerable psychiatric testimony through Dr. Oglesby bearing on mitigating circumstances, appellant simply fails to show any prejudicial error.

Appellant's next issue is wholly without merit. He argues the trial court erred in permitting the prosecutor to ask the following

---

[1] In so arguing, the appellant points out, and the state concedes, that the state hospital's evaluation of the appellant was made without the use of a psychiatrist.

[2] Apparently, prior to trial, the trial court denied his request for appointment of a psychiatrist to assist him in developing issues relating to mitigating circumstances. Nevertheless, appellant was later given ample opportunity to contact Dr. Oglesby prior to trial and call him as a witness at trial.

question of Officer Sydoriak:

> Q   When, when you told him that the Warrens were in the hospital, did that seem to fool him in any way?
>
> A   No, sir.
>
> Q   Did he at any time indicate any, I guess indicate to you that he was unsure as to whether the Warrens were actually dead or alive?
>
> A   No, sir. He was *sure* that they were dead.
>
> Q   *Confident of that?*
>
> A   Yes, sir. (Emphasis added.)

Appellant characterizes the foregoing question as a leading one which was designed to inflame the jury's passion. He offers no explanation concerning how he was prejudiced by the question, nor do we read the question as a leading one. Instead, the question, "Confident of that?" appears to be nothing more than a reaffirmation of the officer's prior remark that "He [appellant] was sure that they were dead." In any event, reversible error may not be predicated upon a ruling admitting evidence unless a substantial right is affected. A.R.E. Rule 103(a); *Daniels* v. *State*, 293 Ark. 422, 739 S.W.2d 135 (1987). Clearly, no substantial right was shown to have been affected here even if we were to hold that a proper objection has been offered by the appellant.

Appellant's fifth issue suggests that he was prejudiced by the placement of a plexiglass screen around the witness stand during the entire trial. Presumably, the screen was used because the appellant was acting as his own attorney, and it separated him from the witnesses during his examination of them. Appellant cites A.R.Cr.P. Rule 33.1 which provides that defendants and witnesses shall not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. *See also Johnson* v. *State*, 261 Ark. 183, 546 S.W.2d 719 (1977) (where this court held that it cannot presume prejudice from the fact that the defendant was brought into the courtroom in handcuffs). Of course, Rule 33.1 concerns physical restraints of a defendant, such as handcuffs; here the screen was not used to restrain the

appellant but merely to protect the witnesses. Two state witnesses, Pam and Cindy Warren, were the objects of the appellant's prior violence, and in acting as his own attorney, appellant was placed in a capacity or role that he could approach witnesses. No doubt, the trial judge's concern for these two witnesses' safety was legitimate. We find nothing in the record that reflects the appellant was prejudiced by the screen device, and in fact, all of the jurors that were voir dired on the subject stated that the screen would have no effect on his or her deliberations.

Regarding appellant's sixth point, he acknowledges that this court has held the state, in proving aggravating circumstances, can proceed under Ark. Code Ann. § 5-4-604(3) (1987) by establishing certain prior felonies without showing those felonies have been reduced to convictions. *See Miller* v. *State*, 280 Ark. 551, 660 S.W.2d 163 (1983). He urges that we overrule the *Miller* decision and hold § 5-4-604(3) unconstitutional. The appellant, however, made no constitutional claim before the trial court, and offers no compelling reason why we should overrule our holding in *Miller* or hold § 5-4-604(3) unconstitutional.

Appellant next contends the jury returned conflicting findings in the penalty phase of the trial. In this connection, the jury unanimously found the appellant committed another felony, an element of which was the use or threat of violence to another person. However, in addition, some of the jurors found that the appellant had no significant history of prior criminal activity. Appellant concedes that it is not impossible to reconcile the jury's two findings but that to do so is speculation. Appellant suggests the conflict exists because the commission of a felony involving force or violence, by definition, is a significant criminal activity. We disagree.

In *Miller v. State*, 269 Ark. 341, 605 S.W.2d 430 (1980), we stated we will not substitute our judgment for the judgment of the jury that heard the evidence if there is a reasonable and understandable application of the facts to the statutory circumstance. Contrary to appellant's argument, we believe the jury could have unanimously found appellant committed prior violent felonies used by the state in showing an aggravating circumstance, but at the same time, some jurors may not have considered those prior felonies a significant history of

prior criminal activity.

Finally, appellant argues the state failed to prove the aggravating circumstance that he had previously committed another felony involving the use or threat of violence to another person. *See* Ark. Code Ann. § 5-4-604(3) (1987). The state alleged appellant had committed aggravated assault and terroristic threatening. *See* Ark. Code Ann. §§ 5-13-204, 5-13-301(a)(1) (1987). We have held that the same degree of proof is not required to sustain a jury finding that an aggravating circumstance exists, as would be required to sustain a conviction. *Miller*, 269 Ark. 341, 605 S.W.2d 430. Regarding the state's allegation of aggravating evidence, Pam Warren testified that on April 27, 1984, the appellant threw a knife at her that broke a tile and landed only six inches above her head. Clearly, the knife throwing incident created a substantial danger of death or serious injury. Later that same evening, the appellant stood in the kitchen doorway pointing a gun and laughing at Pam for four or five minutes. She testified that she was terrified, and called the police. We have no hesitancy in concluding the evidence was sufficient to prove the aggravating circumstance required under § 5-4-604(3).

In accordance with Ark. Sup. Ct. R. 11(f), we have reviewed all objections decided adversely to the appellant, and we find no error. For the reasons stated above, we affirm.