**William Frank PARKER, Petitioner,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Respondent.**

No. PB–C–91–548.

United States District Court, E.D. Arkansas, Pine Bluff Division.

July 7, 1992.

Jeffrey M. Rosenzweig, Little Rock, Ark., for petitioner.

Kyle Ray Wilson, Atty. Gen.'s Office, Little Rock, Ark., for respondent.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

William Frank Parker was twice tried, convicted, and sentenced to death for murdering James and Sandra Warren, the parents of his ex-wife. He now challenges the constitutionality of his conviction and sentence under 28 U.S.C. § 2254. The single issue before the Court on Parker's motion for partial summary judgment is whether his second trial violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. For the reasons that follow, the Court finds that it did not.

### I.

Parker initially was convicted for capital felony murder on the theory that he had murdered the Warrens while burglarizing their home. The statute under which he had been charged required the state to prove that the defendant caused the death of another "in the course of and in furtherance of the [underlying] felony." Ark. Code Ann. § 5–10–101(a)(1) (1987). The Ar-

kansas Supreme Court reversed his conviction because that statute could not be construed to encompass the facts established at Parker's trial.[1] *Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987) (*Parker I*). "The state's proof showed that Parker followed Mr. Warren into the house for only one purpose—to commit the murders of the Warrens." *Id.* at 425, 731 S.W.2d at 758. However, as the court read the statute, burglary cannot be the predicate felony in a capital felony murder formulation where the murder itself is the object of the burglary. Given this, the court noted, Parker should have been prosecuted under Ark. Code Ann. § 5–10–101(a)(4) (Supp.1987) for causing the death of two or more persons in the course of the same criminal episode, but "[i]nstead, the prosecutor elected to proceed under subsection [ (a)(1) ], which was wrong." *Id.* at 426–27, 731 S.W.2d at 758.

The state subsequently charged, tried, and convicted Parker under section 5–10–101(a)(4). On appeal, the Arkansas Supreme Court rejected the argument that Parker's second prosecution violated the Double Jeopardy Clause. *Parker v. State*, 300 Ark. 360, 779 S.W.2d 156 (1989) (*Parker II*). Reviewing *Parker I*, the court said that Parker's original conviction was not reversed because the evidence was insufficient, but because the state had committed "trial error" in "charging and trying Parker under the wrong capital murder provision." *Id.* at 364, 779 S.W.2d at 157. "When holding Parker had been convicted under an improper provision, we never suggested insufficient evidence existed to prove he committed capital murder if charged and convicted under the correct law." *Id.* at 364, 779 S.W.2d at 157.

## II.

The Double Jeopardy Clause, made applicable to the states by the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), says that no person· shall "be sub-

ject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause does not permit "the State . . . to make repeated attempts to convict an individual for an alleged offense." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And ·it protects against multiple prosecutions for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted).

It has long been settled that where a conviction has been set aside on appeal because of some error in the proceedings leading to conviction, there is no double jeopardy upon retrial. *See, e.g., Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *Montana v. Hall,* 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987) (per curiam); *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978); *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Allowing retrial to correct trial error is necessary to ensure the "sound administration of justice":

> Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of. a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further

---

1. Parker also was convicted of two counts of attempted first degree murder, two counts of burglary (for entry of the home for the purpose of murdering the Warrens), kidnapping, and attempted capital murder. These convictions were affirmed on appeal.

prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest. *Tateo,* 377 U.S. at 466, 84 S.Ct. at 1589.

An exception to this rule was recognized in *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978), which held that the Double Jeopardy Clause bars a second trial once a reviewing court has determined that the evidence introduced at trial was insufficient to sustain the jury's verdict. *See also Hudson v. Louisiana,* 450 U.S. 40, 42–43, 101 S.Ct. 970, 971–72, 67 L.Ed.2d 30 (1981); *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978). Reversal for failure to prove guilt beyond a reasonable doubt means "that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury." *Nelson,* 488 U.S. at 39, 109 S.Ct. at 290. For double jeopardy purposes, this is no different from the defendant who obtains a jury verdict of acquittal at the trial level; in both instances, there is absolute immunity from further prosecution for the same offense. *Id.; Burks,* 437 U.S. at 16, 98 S.Ct. at 2149. *Burks* was careful to distinguish between evidentiary insufficiency, that is, a finding "that the government has failed to prove its case," 437 U.S. at 15, 98 S.Ct. at 2149, and trial error, which "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [he] has been convicted through a judicial process which is defective in some fundamental respect," *id.*

### III.

Justice Thurgood Marshall, in his dissent from the denial of certiorari in *Parker v. Arkansas,* —— U.S. ——, 111 S.Ct. 218, 112 L.Ed.2d 186 (1990), read *Parker I* as reversing Parker's conviction for insufficient evidence. Parker argues that view here. He urges that the Arkansas Supreme Court in *Parker II* erroneously characterized as "trial error" the prosecutor's decision to prosecute Parker under the "wrong" capital murder statute, and thus misapplied *Montana v. Hall,* 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987), which permitted a retrial after the state relied on a criminal statute that was legally inapplicable to the defendant's conduct.

Justice Marshall's assessment is based largely on language in *Parker I* and what he understood to be a concession made by the state in its brief to the Court.

> Based on "the facts of th[e] case," and on "the state's proof," the Arkansas Supreme Court concluded that the murders with which petitioner has been charged "were not [committed] 'in the course of and in furtherance of' the [charged] burglary." 292 Ark., at 425, 731 S.W.2d, at 758. Even the respondent thus concedes that petitioner's conviction was reversed because the State "failed to prove its case" with regard to an essential element of Arkansas' capital felony murder statute. Brief for Respondent in Opposition to Petition for Writ of Certiorari at 3 ("According to the Court's opinion, the State adequately proved burglary and murder, *but failed to prove* that the murders were committed during the course of or in furtherance of the burglary" (emphasis added)).

111 S.Ct. at 220. Citing *Burks,* he emphasized that "[t]he unmistakable teaching of our double jeopardy jurisprudence is that the State may *not* avail itself of a second trial to remedy its mistake when it prosecutes a defendant for an offense that it is unable to prove." *Id.*

The phrases "facts of the case" and "state's proof" carry no talismanic qualities that render the Arkansas court's reversal of Parker's conviction a decision to the effect that the government failed to prove its case. The real question is, *why* did the facts or proof not comport with the elements of the crime charged? Was the state "unable to prove" its case due to a *legal* impossibility (Parker was tried and convicted under a statute that could not be applied to his offense) or a *factual* impossibility (the state was not able to supply sufficient evidence to convict under a properly-applied statute)?

A close look at both *Parker I* and *II*, as well as *Hall*, persuades this Court that Parker's initial conviction was reversed due to an error in the judicial proceedings rather than evidentiary insufficiency. The proof "failed" only because the Arkansas Supreme Court construed the capital felony murder law not to apply to the facts all agreed were proved at Parker's first trial. There, the state proved exactly what it set out to prove: Parker unlawfully entered the Warren's home with the intent to commit murder. The prosecutor and the trial judge apparently thought that this constituted capital felony murder based on the underlying felony of burglary. If they had been right, the conviction would have been upheld, as the state had mustered all the evidence needed to convict Parker. When Parker was tried under the statute that did apply to his offense, the Arkansas court found sufficient evidence to convict.

### IV.

The issue before the Arkansas Supreme Court in *Parker I* was one of statutory construction, not sufficiency of the evidence. That is, the court considered whether the capital felony murder statute under which Parker was charged was applicable to his conduct as a matter of law, not whether the prosecution had failed to prove Parker's guilt beyond a reasonable doubt. "An analysis of this statute," the court explained, "leads us to the conclusion that *it cannot be read* to encompass the facts of this case." *Parker I*, 292 Ark. at 425, 731 S.W.2d at 758 (emphasis added).

 Parker had argued on appeal that a defendant cannot be convicted of capital felony murder under Ark.Code Ann. 5–10–101(a)(1) where the underlying predicate felony is burglary if the object of the burglary is murder. Arkansas law defines burglary as "enter[ing] or remain[ing] unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment." Ark.Code Ann. § 5–39–201(a). In Parker's case, the jury was instructed that the "offense punishable by imprisonment" was the murder of the Warrens. *See* Appellant's Brief at 2–3, 334–39, *Parker I*. The capital felony murder statute, in Parker's view, imposed liability for committing a murder in furtherance of a burglary, but not for committing a burglary in furtherance of a murder. "It is simply nonsensical," Parker urged, "to state that the defendant killed James Warren in the course of and in furtherance of entering the dwelling with the purpose of killing James Warren." *Id.* at 377. "The defendant may have acted with the intent to kill the Warrens, but First or Second Degree Murder does not become Capital Felony Murder simply because the defendant followed a victim inside a dwelling." *Id.* at 376.[2]

The Arkansas Supreme Court agreed. "The killings were obviously a form of criminal homicide of some degree, but they were not 'in the course of and in furtherance of' the burglary as required to be capital felony murder." *Parker I*, 292 Ark. at 425, 731 S.W.2d at 758.[3] It explained:

> For the phrase "in the course of and in furtherance of the felony" to have any meaning, the burglary must have an independent objective which the murder facilitates. In this instance, the burglary and murder have the same objective. That objective, the intent to kill, is what makes the underlying act of entry into the home a burglary. The burglary was actually no more than one step toward

---

**2.** At that time, according to Parker's brief, only one reported case in Arkansas, *Abernathy v. State*, 278 Ark. 250, 644 S.W.2d 590 (1983), involved a conviction for capital murder based on a burglary where the defendant entered an occupiable structure with the intent to commit murder. In that case, the Arkansas Supreme Court expressed doubt about the soundness of the statutory scheme, but refused, over a strong dissent by Justice Purtle, to decide the question.

Parker noted that all other capital cases based on burglary involved a distinct and separate underlying felony.

**3.** It was Parker himself who suggested to the Arkansas Supreme Court that he could have been tried for killing two persons in the same criminal episode. *See* Appellant's Brief at 390, *Parker I*.

the commission of the murder and was not to facilitate the murder. *Id.* at 427, 731 S.W.2d at 759. That the court viewed this as a matter of statutory interpretation rather than failure of proof is indicated clearly by language in the court's final paragraph on the issue.

"If we can, we give legislation a construction to affect legislative intent.... However, this is a criminal statute which must be strictly construed with doubt being resolved in favor of the accused." *Knapp v. State,* 283 Ark. 346, 676 S.W.2d 729 (1984). In strictly construing our statutes, as we must do, it is apparent that in order to constitute capital felony murder, the murder must be in the *course of,* and in *furtherance* of the burglary, which is not the case before us.

*Id.* at 427, 731 S.W.2d at 759.

■ Any ambiguity in *Parker I* was resolved by the Arkansas Supreme Court in *Parker II.* In that case, the court clearly disavowed any notion that its earlier opinion was based upon the failure of the state to prove its case. The conviction was overturned due to trial error "in charging and trying Parker under the wrong capital murder provision." *Parker II,* 300 Ark. at 364, 779 S.W.2d at 157.

When holding Parker had been convicted under an improper provision, we never suggested insufficient evidence existed to prove he committed capital murder if charged and convicted under the correct law.... [T]he state at the second trial corrected its error by charging and convicting the appellant under capital murder provision § 5–10–101(a)(4), and the evidence was unquestionably sufficient to sustain the jury's guilty verdict under that charge.

*Id.,* 779 S.W.2d at 157–58.[4]

The Arkansas Supreme Court's interpretation of its prior opinion binds this Court, *Tibbs v. Florida,* 457 U.S. 31, 47 n. 24, 102 S.Ct. 2211, 2221 n. 24, 72 L.Ed.2d 652 (1982) (the meaning attached to an ambiguous prior reversal is a matter of state law), *Greene v. Massey,* 437 U.S. 19, 25–26 and nn. 8–10, 98 S.Ct. 2151, 2154–55, and nn. 8–10, 57 L.Ed.2d 15 (1978) (same), *DuBois v. Lockhart,* 859 F.2d 1314, 1317 n. 3 (8th Cir.1988) (same), unless, of course, the reversal actually was based on insufficient evidence as opposed to trial error. But nothing of the sort is apparent here. Parker's case is different from those in which a conviction is reversed because the evidence is legally insufficient to sustain a conviction under applicable law. *See, e.g., Foster v. State,* 290 Ark. 495, 722 S.W.2d 869 (1987), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3213, 96 L.Ed.2d 700 (1987) (state's evidence insufficient due to lack of corroboration of accomplice). The court in *Parker I* examined the applicability of the law, not the adequacy of the proof. If the evidence was in any sense "insufficient" to convict under the felony murder statute, it was only because the court *narrowly construed the statute* to make it inapplicable to the proof offered at trial. The convic-

---

4. The Arkansas Supreme Court faced a similar situation in *Sellers v. State,* 300 Ark. 280, 778 S.W.2d 603 (1989) (*Sellers II*). Sellers was convicted of capital felony murder involving a burglary, the underlying purpose of which was to commit assault and battery. Relying on *Parker I,* the court reversed the conviction because it was improper for the jury to consider burglary as the underlying felony with assault and battery as the purposes of entry because the murder was not separate from the assault and battery, but rather "the very culmination of them." *Sellers v. State,* 295 Ark. 489, 492, 749 S.W.2d 669, 671 (1988) (*Sellers I*). Sellers was retried and convicted of capital felony murder, again with burglary as the underlying felony. This time, however, the jury was instructed it could find Sellers guilty if it found he burglarized the victim's home for the purpose of committing theft. Sellers' argument that his second trial twice placed him in jeopardy was rejected on appeal in *Sellers II.* The court said that the earlier reversal was the result of trial error rather than insufficiency of the evidence. In both trials, the court noted, the evidence was sufficient to show that Sellers unlawfully entered the dwelling with the purpose of committing theft.

*Parker II* cited *Sellers II* in suggesting that Parker had mistakenly confused evidentiary sufficiency and trial error. More importantly, however, *Sellers I* and *II* indicate that the Arkansas Supreme Court views *Parker I* as establishing a general rule in Arkansas that burglary cannot be the predicate felony in a capital felony murder charge where the murder is the object of the burglary.

tion was reversed, therefore, based the court's view of the law, not its view of the evidence.

While *Parker I* suggested that the error was in *charging* Parker under the wrong statute, 292 Ark. at 426, 731 S.W.2d at 758 ("the prosecutor elected to proceed under subsection (1)(a), which was wrong"), *Parker II* makes clear the error was both in *charging* and *convicting* Parker under the wrong statute. The jury specifically was instructed, over Parker's objections, that the underlying felony to the burglary was the murder of the Warrens. *See* Appellant's Brief at 334–39, *Parker I.* The holding in *Parker I* made this instruction erroneous as a matter of law. Since *Burks* describes "trial error," among other things, as giving "incorrect instructions," 437 U.S. at 15, 98 S.Ct. at 2149, *Parker II* correctly read *Parker I* as reversing the conviction for a defect in the proceedings rather than for failure of proof at trial.

To look at it another way, had the Arkansas Supreme Court determined that the law was indeed what the jury in Parker's case had been instructed, that is, that burglary could be the predicate felony when the object of the burglary was the murder, it is undisputed that the evidence offered at trial was sufficient to convict Parker. The problem, therefore, was the applicability of the law to the evidence (*legal* inapplicability), not the applicability of the evidence to the law (*factual* inapplicability). The inadequacy was in the statute (or, more accurately, in the prosecutor's and trial judge's understanding of the statute), not the proof.

This is not some "semantic slight of hand," as Justice Marshall suggested, *Parker*, 111 S.Ct. at 220; rather, it is consistent with the analysis undertaken in both *Burks* and *Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987). In *Hall* the defendant initially was charged with felony sexual assault of his stepdaughter. He moved for dismissal on the ground that he could be prosecuted only under the more specific incest statute. After the trial judge granted the motion, the state promptly filed a new information charging him with incest and proceeded to trial, where the defendant was convicted. Hall argued on appeal that he could not lawfully be convicted of incest because the victim was not his stepdaughter within the meaning of the incest statute. At the time of the assault, the incest statute did not apply to sexual assaults against stepchildren. The amended statute under which Hall was tried did not become effective until three months after the assault.

The Montana Supreme Court reversed Hall's conviction and held that the Double Jeopardy Clause prohibited retrial. The court determined that sexual assault and incest were the same offense for double jeopardy purposes and read *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), to prevent successive trials in such circumstances. It also believed that Hall would be subject to double jeopardy if retried after a conviction for a crime that did not exist when he committed the acts in question.

The United States Supreme Court disagreed.

[W]e see no reason why the State should not be allowed to put respondent on trial on the related charge of sexual assault. There is no suggestion that the evidence introduced at trial was insufficient to convict respondent. Montana originally sought to try respondent for sexual assault. At respondent's request, Montana tried him instead for incest. In these circumstances, trial of respondent for sexual assault, after reversal of respondent's incest conviction on grounds unrelated to guilt or innocence, does not offend the Double Jeopardy Clause.

*Hall*, 481 U.S. at 403, 107 S.Ct. at 1826–27. *Brown* was inapplicable, the Court explained, because in that case the defendant's first conviction was not overturned on appeal; after the defendant served a prison sentence for joyriding, state charged him with auto theft for the same offense. Since Hall's first conviction was invalidated, "[t]his case falls squarely within the rule that retrial is permissible after a conviction is reversed on appeal." *Id.* at 404, 107 S.Ct. at 1827. Because there was no

suggestion that evidence presented at Hall's trial was insufficient to convict him of sexual assault, reprosecution on that charge would not place him in double jeopardy. The Court also rejected the idea that the Double Jeopardy Clause would forbid Hall's retrial because he had been convicted of a nonexistent crime.

> [U]nder the Montana court's reading of the Montana sexual assault statute, respondent's conduct apparently was criminal at the time he engaged in it. If that is so, the State simply relied on the wrong statute in its second information. It is clear that the Constitution permits retrial after a conviction is reversed because of a defect in the charging instrument. *E.g., United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).

481 U.S. at 404, 107 S.Ct. at 1827.

Justice Marshall rightly understood *Hall* to say that "the State had prosecuted the defendant under the 'wrong' statute not because the state *could not prove* that the defendant had violated the state incest statute, but because that statute was *legally inapplicable* to the defendant's conduct." 111 S.Ct. at 220 (emphasis in original). Parker's case was different, he concluded, because "the 'inapplicability' of the capital felony murder statute to [Parker's] conduct was *factual,* not legal." *Id.* (emphasis in original). This distinction, however, is illusory. If a statute can be "legally inapplicable," it always can be said that the state failed to supply sufficient proof to make the statute applicable. That is what both Justice Marshall and Parker end up doing with the reversal of Parker's first conviction. In the same way, one could say that evidence at Hall's trial was "insufficient" because it "failed to prove" that the victim was his stepdaughter within the meaning of the Montana incest statute. The problem in *Hall,* however, lay not with the evidence itself, but with the charge; Hall was prosecuted under a statute that did not apply to his conduct at the time of the assault.

The Supreme Court characterized Hall's initial prosecution under "the wrong statute" as "a defect in the charging instrument." *See United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). Justice Marshall, in reasoning now adopted by Parker, said this appropriately described the state's decision in *Hall* to charge the defendant under the incest statute rather than the sexual assault statute, "because the inapplicability of the incest statute would have required the *dismissal* of the State's information had this challenge been properly raised by pretrial motion." 111 S.Ct. at 221 (emphasis in original). He then contrasted Parker's case: "[T]he grounds for reversal of [Parker's] original conviction was the failure of the state's proof *at trial;* nothing in the Arkansas Supreme Court's opinion in *Parker I* indicates that the capital felony murder count against [Parker] was legally deficient *as charged.*" *Id.* (emphasis in original). But that is what the Arkansas Supreme Court did say, in so many words. It is true that the information charging Parker was not *facially* deficient, but neither was Hall's. In each case, the crime named on the information existed, only not *as applied* to that defendant. Incest was a crime in Montana; Hall's conduct, however, did not constitute incest within the meaning of the incest statute. Murder in furtherance of a burglary was a capital crime in Arkansas; Parker's conduct, however, did not constitute felony murder within the meaning of the felony murder statute. *Parker I* held that as a matter of law there is no crime of capital felony murder when burglary is the underlying felony and the object of the burglary is the murder. Like Hall, Parker was prosecuted for a crime that did not in fact exist within the meaning of the statute under which he had been charged. Had this challenge been properly raised *and decided* by pretrial motion, the capital felony murder charge would have been dismissed. Whether that error was discovered at the trial or appellate level makes no difference for double jeopardy purposes.

The Supreme Court in *Hall* noted that under the Montana court's reading of the Montana sexual assault statute, Hall's conduct apparently was criminal at the time he

engaged in it. 481 U.S. at 404, 107 S.Ct. at 1827. *Hall,* therefore, at least means this: If the state convicts a defendant under the wrong statute (that is, a statute that does not encompass the defendant's otherwise criminal conduct), and that conviction is overturned on appeal, the Double Jeopardy Clause does not forbid retrial under the correct statute (that is, the statute that makes such conduct criminal), so long as there is sufficient evidence to convict under that statute.

That is precisely what occurred in Parker's case. The state convicted Parker under the capital felony murder statute which, as read by the Arkansas Supreme Court, did not apply to his offense. In reversing Parker's conviction, the court "never suggested insufficient evidence existed to prove he committed capital murder if charged and convicted under the correct law." *Parker II,* 300 Ark. at 364, 779 S.W.2d at 157. Parker subsequently was charged under another statute that made his conduct capital murder. Upon retrial, the Arkansas court found that "the evidence was unquestionably sufficient to sustain the jury's guilty verdict under that charge." *Id.,* 779 S.W.2d at 158.

In *Hall* the prosecutor was asleep at the switch, yet retrial was permitted. Here, as Parker noted in his brief on appeal in *Parker I,* the Arkansas Supreme Court had not decided the question of whether burglary could be the predicate felony when the object of the burglary was to commit the murder. This Court can see no reason why Parker should not have been retried on the related capital charge. *See United States v. Todd,* 964 F.2d 925, 928–930 (9th Cir. 1992) (no double jeopardy upon retrial for related offense of sexual contact where first conviction was overturned because defendant's acts did not constitute public sexual intercourse under controlling state statute); *United States v. Miller,* 952 F.2d 866, 870–74 (5th Cir.1992) (double jeopardy did not preclude retrial on permissible theory of mail fraud after conviction on legally deficient theory had been overturned); *United States v. Davis,* 873 F.2d 900, 903–07 (6th Cir.1989) (same). To paraphrase *Tateo,* 377 U.S. at 466, 84 S.Ct. at 1589, it

would be a high price indeed for society to pay were every accused granted immunity from punishment because a reviewing court narrowly construed (for the first time) the criminal statute under which he was convicted. It is doubtful that appellate courts would be as zealous as they now are in protecting against prosecution under vague or too-broadly-applied criminal laws if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution.

The motion for partial summary judgment is denied.

IT IS SO ORDERED.