STATE of Arkansas *v.* Adrian ZAWODNIAK

CR 96-1503                                        946 S.W.2d 936

Supreme Court of Arkansas
Opinion delivered June 23, 1997
[Petition for rehearing denied September 11, 1997.]

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Senior Asst. Att'y Gen., for appellant.

*William R. Simpson, Jr.*, Public Defender, by: *Jeffrey A. Weber*, for appellee.

TOM GLAZE, Justice. On May 14, 1995, a Jacksonville police officer was dispatched to check a report that a person was passed out or sleeping in a car parked in front of a restaurant. Upon arriving at the scene, the officer awakened the person identified as Adrian Zawodniak. Zawodniak was subsequently found in possession of methamphetamine, a loaded handgun, and drug paraphernalia. The paraphernalia included a portable scale, a small

spoon, and gold tweezers. He was charged with simultaneous possession of drugs and firearms under Ark. Code Ann. § 5-74-106(a) (Repl. 1993), and with possession of drug paraphernalia under Ark. Code Ann. § 5-64-403 (Repl. 1993).

Zawodniak waived a jury trial, and was tried at a bench trial on March 11, 1996. The State called three police officers and a drug chemist who established that when Zawodniak was arrested, he possessed methamphetamine, drug paraphernalia, and a 3.80 Loracin automatic pistol, containing four bullets — one in the chamber. The weapon was found in Zawodniak's waistband.

Immediately upon the State resting its case, Zawodniak moved for a directed verdict. He claimed the simultaneous-possession statute, § 5-74-106(a), required that, in addition to proving he was in the simultaneous possession of drugs and a firearm, the State must show he was involved in criminal gang or group activity. The trial court agreed with Zawodniak's interpretation of the statute and granted his motion. The trial court then reduced Zawodniak's charge and convicted him only of possession of a controlled substance and of drug paraphernalia. The trial court placed Zawodniak on five years' probation. If convicted of violating § 5-74-106, Zawodniak would have been guilty of a Class Y felony and punishable by a sentence of not less than ten years and not more than forty years, or life. *See* Ark. Code Ann. §§ 5-74-106(b), 5-4-104(c)(1), and 5-4-401(a)(1) (Repl. 1993 and Supp. 1995).

The State appeals the trial court's decision under Rule 3 of the Arkansas Appellate Procedure—Criminal, asserting that the lower court committed error to the State's prejudice and that the correct and uniform administration of the criminal law requires this court's review. We agree.

As previously indicated, the State's appeal focuses on the trial court's construction of § 5-74-106, which in pertinent part provides as follows:

(a) No person shall unlawfully commit a felony violation of § 5-64-401 (Uniform Controlled Substances Act) or unlawfully attempt, solicit, or conspire to commit a felony violation of § 5-64-401 while in possession of:

(1) A firearm;

* * *

The State submits that its evidence at trial clearly showed Zawodniak simultaneously possessed drugs and a loaded firearm at the time of his arrest, and that was all that was required under the wording in § 5-74-106(a). However, Zawodniak argues § 5-74-106(a) is a part of the Arkansas Criminal Gang, Organization, or Enterprise Act codified in §§ 5-74-101 -108, and § 5-74-102 of that Act reflects that, to violate § 5-74-106(a), a person must also be shown to have been associated with "gang activity" at the time of the violation.

■ ■ Zawodniak's and the trial court's reading of these statutes is contorted and fails to give the language of § 5-74-106(a) its plain meaning, as our cases direct. *See State v. McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994). This court has also stated that it is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.* at 786. No error or omission is evident here. In fact, § 5-74-106(a), as we read it, not only serves to deter organized gang and criminal activities, but also seeks the broader purpose to curtail any person's use of a firearm when that person is involved in the illegal trafficking in or possession of controlled substances. Such interpretation is in keeping with the plain language employed in § 5-74-106(a), and in no way diminishes the General Assembly's declared intent to combat criminal gang activity. Because the trial court erroneously engrafted an element of proof — gang activity — not required under § 5-74-106(a), we reverse its ruling that required the State to prove that element.

The State further requests we remand this case for retrial, but Zawodniak rejoins, stating that, when the trial court reduced his charge to possession of a controlled substance, the reduction resulted in an acquittal of the simultaneous-possession charge. Citing *Green v. United States*, 355 U.S. 184 (1957), and *United States v. Scott*, 437 U.S. 82 (1978), he argues any retrial is barred by the Double Jeopardy Clause.

The Supreme Court in *Burks v. United States*, 437 U.S. 1 (1978), undertook to review its earlier cases involving the Double Jeopardy Clause, and in doing so distinguished between reversals due to trial error and those resulting from evidentiary insufficiency. *Id.* at 12–18. The Court said that the most reasonable justification for allowing retrial to correct trial error was espoused in *United States v. Tateo*, 377 U.S. 463 (1964), as follows:

> It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.

The *Burks* court then concluded by stating the following:

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. *See* Note, Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence, 31 U. Chi. L. Rev. 365, 370 (1964).

> The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal — no matter how erroneous its decision — it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty. 437 U.S. at 15–16.

The *Scott* case relied on here by Zawodniak was decided after *Burks*, and the *Scott* court pointed out that one problem in understanding or applying the Double Jeopardy Clause in prior cases was that the United States had no right to appeal a criminal case during the first century of the Court's existence. The Court in *Scott* pointed out that its growing experience with Government appeals required its re-examination of the rationale of its decisions regarding the Double Jeopardy Clause. Upon making its review, the Court announced that, while the State should not be allowed to make repeated attempts to convict an individual for an offense, the principle underlying double jeopardy cannot be expanded to include situations in which the defendant is responsible for the second prosecution.

The *Scott* Court further concluded that, where a defendant chooses to avoid conviction, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail, the defendant by deliberately choosing to seek termination of the trial, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a trial court ruling favoring the defendant. The Court proclaimed, "[T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." 437 U.S. at 99.

In applying the Double Jeopardy Clause rationale set out in *Burks* and *Scott* to the circumstances present here, it is clear that Zawodniak was the one who initiated the legal claim, albeit erroneous, that § 5-74-106(a) contained an element — gang activity — that the State must prove in order to convict him of simultaneous possession. As discussed above, the trial court erred by adopting Zawodniak's legal argument, and as previously mentioned, the State had the right to appeal the trial court's decision. The State also correctly points out that the proof it offered at trial indisputably showed that Zawodniak possessed both drugs and a loaded firearm at the time of his arrest, and such evidence was sufficient to convict him of the simultaneous- possession charge under § 5-74-106(a). *See Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995).

■ ■   In sum, Zawodniak received a favorable trial court decision not because the State had failed to prove its case, but because the trial court, at Zawodniak's instigation, erred in applying erroneous law. In other words, defendant Zawodniak, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the simultaneous-possession charge of which he was accused, suffers no injury cognizable under the Double Jeopardy Clause. *See Scott*, 437 U.S. at 98-99. With considerable clarity, the *Scott* court, holding in favor of the government, said as follows:

> This is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. It is instead a picture of *a defendant who choses to avoid conviction and imprisonment, not because of his assertion that the Government failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt.* (Emphasis added.)

To bar appeal, the trial court's judgment must be one that indicates that the government's factual case has failed either as to the statutory elements of the offense charged, or as to the burden shifted to the government when a defendant raises a prima facie defense that, unrebutted, would justify a finding of innocence. 437 U.S. at 87-98. Permitting retrial in this instance is not the sort of oppression at which the Double Jeopardy Clause is directed, but instead simply affords the defendant an opportunity to obtain a fair adjudication of his guilt free from error. *See Lockhart v. Nelson*, 488 U.S. 33 (1988); *see also Parker v. State*, 300 Ark. 360, 779 S.W.2d 156 (1989).

For the reasons above, we reverse and remand for further proceedings.[1]

---

[1]  While the concurring and a dissenting opinion suggest the result reached here is at odds with *Brooks v. State*, the situations involved in the two cases are not at all the same. *Brooks* did not concern trial error; instead, the trial court properly considered the elements of aggravated robbery, and at the end of the state's case in chief, initially determined the State's evidence was insufficient to prove the offense. Then, after all the evidence was introduced, the trial court, considering the same elements of aggravated robbery, changed

NEWBERN, J., concurs; BROWN, IMBER, and THORNTON, JJ., concur in part and dissent in part.

DAVID NEWBERN, Justice, concurring. The majority correctly holds that "gang activity" is not an essential element of the simultaneous-possession offense created by Ark. Code Ann. § 5-74-106 (Repl. 1993). The Trial Court concluded otherwise and "reduced" the simultaneous-possession charge to a charge of possession of methamphetamine due to the State's failure to establish that Mr. Zawodniak simultaneously possessed drugs and firearms while engaging in "gang activity." That was error.

Upon remand, Mr. Zawodniak may be retried consistently with the Double Jeopardy Clause of the United States Constitution. My analysis of the important double-jeopardy question presented in this case differs from that of the majority.

The majority opinion discusses the decisions of the United States Supreme Court in *Burks v. United States,* 437 U.S. 1 (1978); *United States v. Tateo,* 377 U.S. 463 (1964); and *Lockhart v. Nelson,* 488 U.S. 33 (1988), as well as our decision in *Parker v. State,* 300 Ark. 360, 779 S.W.2d 156 (1989), *cert. denied* 498 U.S. 883 (1990). These cases stand for the proposition that the Double Jeopardy Clause does not prohibit the State from retrying a defendant who has successfully appealed a *conviction* and obtained a reversal on the basis of "trial error" as opposed to evidentiary insufficiency.

A critical distinction between this case and the ones mentioned above is that the "error" committed by the Trial Court

---

its mind, and held the State proved the defendant's guilt. In short, no trial error occurred — only a factual finding of guilt transpired which was unquestionably subject to the Double Jeopardy Clause.

Also, we note that, while the dissenting opinion seems to rely on *Sanabria v. United States,* 437 U.S. 54 (1978), neither the State, Zawodniak, nor the trial court made mention of that holding as relevant to the circumstances here. We additionally emphasize that *Sanabria* has been severely critized on the grounds that it met the appeal test of *Scott* (only legal issues would be before the appellate court, and defendant had himself sought to teminate the first prosecution short of jury verdict), and that it would seem to give the trial court some leeway "to control the double jeopardy consequences of its ruling by choosing the form employed" in terminating the case. LaFave and Israel, III, *Criminal Procedure,* § 24.3, pgs. 81-82 (1984).

with respect to the simultaneous-possession charge resulted not in a conviction of Mr. Zawodniak on that charge but in a "reduction" of it to a charge of possession of methamphetamine. The *Burks, Tateo, Nelson,* and *Parker* cases do not hold that the Double Jeopardy Clause permits a defendant to be retried for the same offense after a trial court, as the result of error, has "reduced," dismissed, or granted a directed verdict on the charge, acquitted the defendant, or otherwise terminated the proceedings in the defendant's favor. In the absence of a conviction that is reversed on the basis of trial error, these cases are inapposite, and authority for our decision in the case at bar must be found elsewhere.

As the majority opinion suggests, such authority lies in the United States Supreme Court's decision in *United States v. Scott,* 437 U.S. 82 (1978). The controlling principle from that case is that, where a trial court, at the defendant's request, terminates the proceedings on legal grounds without *acquitting* the defendant of the offense charged, the State may appeal the trial court's decision and retry the defendant if the reviewing court determines that the trial court's ruling was in error.

In the *Scott* case, the Supreme Court held that the Double Jeopardy Clause did not bar the Government from appealing the ruling of the District Court that granted the respondent's motion to dismiss two counts of narcotics distribution on the basis of preindictment delay. The Government's appeal from the District Court's ruling had been dismissed by the Sixth Circuit Court of Appeals on the basis of the Double Jeopardy Clause, and the Supreme Court reversed.

The Court acknowledged that a genuine acquittal, "whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by reversal." *United States v. Scott,* 437 U.S. at 91. The Court also recognized, however, that certain rulings by the Trial Court — such as the District Court's ruling on the issue of preindictment delay — that terminate the proceedings favorably to the defendant do not constitute acquittals for double-jeopardy purposes and thus do not foreclose an appeal and the possibility of

retrial on the same offense. According to the Court, a defendant who does not obtain an acquittal but instead "deliberately choos[es] to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused . . . suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant." *Id.* at 98–99.

According to one commentator's view of the Court's double-jeopardy jurisprudence, "[a]ny resolution that falls within the Supreme Court's definition of an acquittal becomes an absolute bar to further prosecution. Therefore, determining whether a particular result is an acquittal is crucial." Ann Bowen Poulin, *Double Jeopardy and Judicial Accountability: When Is an Acquittal Not an Acquittal?*, 27 ARIZ. ST. L.J. 953, 970 (1995). Another commentator agrees that the Double Jeopardy Clause, as interpreted in the *Scott* case, "protects a defendant from a second trial only if he has been acquitted in the first." James D. Gordon III, *Double Jeopardy and Appeal of Dismissals: A Before-and-After Approach*, 69 CALIF. L. REV. 863, 872 (1981). *See also* Jason Wiley Kent, *Double Jeopardy: When is an Acquittal an Acquittal?*, 20 B.C. L. REV. 925, 935 (1979)(stating that, under the *Scott* case, the availability of a double-jeopardy defense following judgment of dismissal "depends on subtle distinctions in the reason for the judgment").

Our inquiry here is thus broader than the majority opinion suggests it to be. The issue is not merely whether "trial error" occurred below or whether the termination of the first trial occurred at Mr. Zawodniak's behest. We must resolve the more precise question of whether the Trial Court's ruling constituted an "acquittal" of the simultaneous–possession charge given the definition of that term announced in the *Scott* case. We are constrained merely to declare error if we answer the question affirmatively. We may remand for further proceedings, and the State may retry Mr. Zawodniak, if we answer the question in the negative.

According to the *Scott* decision, a defendant is acquitted and thus protected by the Double Jeopardy Clause from an appeal by

the State and the possibility of retrial "only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" *United States v. Scott,* 437 U.S. at 97, *quoting United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571 (1977). Thus, "in order to bar appeal the trial court's judgment must be one that indicates that the government's factual case has failed either as to the statutory elements of the offense charged, or as to the burden shifted to the government when a defendant raises a prima facie defense that, unrebutted, would justify a finding of innocence." Kent, *supra,* at 940. Another commentator understands the *Scott* case as barring "appeal of midtrial dismissals based on factual grounds but not those based on legal grounds." Gordon, *supra,* at 876.

In determining whether the Trial Court's ruling constitutes an acquittal, we are not bound by the "form of the judge's action" or the manner in which the judge or counsel have characterized the ruling. *United States v. Martin Linen Supply Co.,* 430 U.S. at 571. *See United States v. Scott,* 437 U.S. at 96, *quoting United States v. Jorn,* 400 U.S. 450, 478 n.7 (opinion of Harlan, J.)(1971); *United States v. Wilson,* 420 U.S. 332, 336 (1975); *United States v. Sisson,* 399 U.S. 267, 270 (1970). *But see Sanabria v. United States,* 437 U.S. 54, 66 (1978)("While form is not to be exalted over substance in determining the double jeopardy consequences of a ruling terminating a prosecution, . . . neither is it appropriate entirely to ignore the form of order entered by the trial court . . . .")(citations omitted).

Although "the line between an acquittal and a non-acquittal is sometimes hard to draw," Poulin, *supra,* at 979, and "the question of what constitutes an acquittal has proven difficult to answer," *United States v. Markus,* 604 F. Supp. 736, 739 (D. N.J. 1985), *aff'd* 786 F.2d 1147 (3d Cir. 1986), in this case it seems clear that there was not an acquittal of the offense charged based on failure to prove any of its elements. Rather, the Trial Court in effect nullified the charge because of failure of the State to prove a non-extant element. The Double Jeopardy Clause therefore does not prevent the State from retrying Mr. Zawodniak because the

Trial Court did not find that the State failed to prove any of the factual elements of the offense charged.

The result we reach is at odds with our decisions in *Brooks v. State,* 308 Ark. 660, 827 S.W.2d 119 (1992); *State v. Johnson,* 317 Ark. 226, 876 S.W.2d 577 (1994); and *State v. Young,* 315 Ark. 656, 869 S.W.2d 691 (1994). In those cases, however, we failed to consider the definition of "acquittal" espoused by the Supreme Court in the *Scott* case. The *Brooks, Johnson,* and *Young* cases are thus not controlling here.

Mr. Zawodniak has urged that a retrial would violate his double-jeopardy rights under both the United States Constitution and the Arkansas Constitution, but he has neither argued that the latter affords greater protection than the former nor presented us with any other "independent and adequate state ground" on which to decide this case. *See Michigan v. Long,* 463 U.S. 1032 (1988).

ANNABELLE CLINTON IMBER, Justice, dissenting in part, concurring in part. I agree with the majority that the trial court erroneously construed the simultaneous-possession statute, Ark. Code Ann. § 5-74-106(a), to require proof of gang or other organized criminal activity, a nonexistent element of the offense. However, I depart from the majority's analysis that simply because the judge committed "trial error," the Double Jeopardy Clause does not bar a remand of the present case. Instead, Justices Newbern and Thornton frame the correct inquiry — whether the trial court's ruling acquitted Zawodniak on the simultaneous-possession charge. If in fact Zawodniak was acquitted, then the Double Jeopardy Clause bars a subsequent prosecution. *See United States v. Scott,* 437 U.S. 82 (1978). Unlike Justice Newbern, my reading of the guiding cases suggests that the trial court's ruling was an acquittal on the simultaneous-possession charge.

In *United States v. Scott, supra,* the defendant moved to dismiss a count due to preindictment delay, which the trial court granted. While the Fifth Circuit held that double jeopardy prevented retrial, the United States Supreme Court "granted certiorari to give further consideration to the applicability of the Double Jeopardy Clause to Government appeals from orders granting defense

motions to terminate a trial before verdict." *United States v. Scott, supra.* The Court reversed the Fifth Circuit, recognizing that two separate lines of cases had developed concerning trials where no final determination of guilt or innocence had been made: i) where the trial court declares a mistrial and ii) where "the trial judge terminates the proceedings favorably to the defendant on a basis not related to factual guilt or innocence." *United States v. Scott, supra.*

The defendant's case fell into the latter category. The dismissal of the first count was based on preindictment delay and not on the sufficiency of the evidence to establish his guilt. The defendant had voluntarily elected to seek termination of his trial on grounds unrelated to guilt or innocence. He had not been acquitted on the first count because "a defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" *United States v. Scott, supra* (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564 (1977)). In contrast to an acquittal, the dismissal of the charge for preindictment delay merely represented a legal judgment that the defendant, although potentially criminally liable, could not be punished for a supposed constitutional violation. The *Scott* Court thus concluded that where a "defendant himself seeks to have the trial terminated without any submission to either judge or jury as to his guilt or innocence, an appeal by the Government from his successful effort to do so is not barred. . . ." *United States v. Scott, supra.*

The Court reached an opposite result in *Sanabria v. United States,* 437 U.S. 54 (1978), handed down the same day as *Scott.* In *Sanabria,* the trial court erroneously excluded evidence, leading to a judgment of acquittal on a count due to insufficiency of the evidence. The *Sanabria* Court held that double jeopardy barred a retrial. While the Government argued that the trial court had merely dismissed a portion of the charge (thus permitting a retrial of that portion) while actually acquitting only on a separate theory of liability, the Court found it impossible to accept this characterization. The Court stated that the "the judgment of acquittal was entered on the entire count and found [defendant] not guilty of

the crime. . . without specifying that it did so only with respect to one theory of liability." The Court instead characterized the trial court's action as an "erroneous evidentiary ruling," which led to an acquittal based on insufficient evidence — due to the fact that the trial court found that the indictment's description of the offense was too narrow to justify the admission of certain evidence. *Sanabria v. United States, supra.* This judgment of acquittal, "however erroneous," barred further prosecution on any aspect of the count, given that "when a defendant has been acquitted at trial he may not be retried on the same offense, even if the *legal rulings* underlying the acquittal were erroneous." *Sanabria v. United States, supra* (emphasis added).

In the present case, the trial court concluded that the State's case was factually insufficient to convict Zawodniak, albeit premised on an erroneous legal ruling. Defense counsel moved for a "directed verdict," arguing that "the [S]tate has failed to prove that element [of gang or organized criminal activity] and it is required by law to be proven." The trial court "grant[ed] [Zawodniak's] motion to reduce this to possession of methamphetamine. And I do so because of the language in what I consider to be a preamble to that whole area passed by the Legislature, looking to their intent, as to deal with gang activity. . . ." While the State argued that gang activity was not an element required by the statute, it did address the sufficiency issue as framed by Zawodniak:

> [A]lso with this defendant, we have a statement written by him, although there's — other than that statement, we did not have anyone here as far as what organizations or who else he's involved. He states in his written statement that he is part of the life and he's part of this whole particular life-style, the power, the money, the drugs, everything. So, I don't believe this is — if he wanted to fit it into here, we don't have any idea who else he is, I guess, organizing with. But apparently as far as his statement states he is part of this whole life-style that includes possession and use of methamphetamine and, I guess, carrying of weapons and everything.

The trial court responded to the State's argument, "as you say, those witnesses are not here today. And the Court still looks then

at the particular areas of this case." In sum, the trial court applied the State's proof to the simultaneous possession statute, erroneously "added" a non-existent element, and concluded that the State's evidence was insufficient to convict, resulting in a final determination that the defendant was innocent of the crime charged. At the very least this involved a factual determination, and was more than a purely legal ruling. It was certainly qualitatively different than a defendant "seek[ing] to have the trial terminated without any submission to either judge or jury as to his guilt or innocence," as was the dismissal for preindictment delay in *Scott*. Instead, Zawodniak argued that he was innocent of the crime charged, due to a failure of proof in the State's case. As such, the present case is far more like the situation presented in *Sanabria*, where the trial court entered a judgment of acquittal based on an erroneous legal ruling.

Moreover, this court has established a precedent directly on point. In *Brooks v. State*, 308 Ark. 660, 827 S.W.2d 119 (1992), the trial court granted the appellant's directed verdict motion on an aggravated robbery charge, on the mistaken assumption that aggravated robbery required that something be taken from the victim. After the close of all evidence, the trial court reversed itself, explaining that its prior ruling was an "error of law." The reinstated aggravated robbery charge was then submitted to the jury, resulting in a conviction.

Relying on *Sanabria*, this court reversed the conviction on double jeopardy grounds, holding that the trial court's dismissal based on insufficient evidence *was an acquittal* on the aggravated robbery charge. This was true even though the trial court made an erroneous legal ruling effectively "adding" an element to the aggravated robbery statute that did not exist.

*Brooks* is therefore indistinguishable from the present case. As in *Brooks*, Zawodniak submitted to the trial court's final determination as to his guilt or innocence, which was ultimately resolved in favor of the defendant, based on the trial court's erroneous legal conclusion. That the acquittal was founded on an erroneous legal ruling — that the simultaneous-possession statute required proof of gang activity — is irrelevant for purposes of double jeopardy

analysis. *See Sanabria v. United States, supra; State v. Johnson,* 317 Ark. 226, 876 S.W.2d 577 (1994); *State v. Young,* 315 Ark. 656, 869 S.W.2d 691 (1994); *Brooks v. State, supra; State v. Joshua,* 307 Ark. 79, 818 S.W.2d 249 (1991), *overruled on other grounds,* 310 Ark. 244, 835 S.W.2d 869 (1992). The trial court's judgment of acquittal based on insufficiency of the evidence, however erroneous, bars any further prosecution on any aspect of the simultaneous-possession charge.

For these reasons, I concur with the majority to reverse the trial court's ruling that the State was required to prove gang activity under Ark. Code Ann. § 5-74-106(a); however, I respectfully dissent from the majority's remand for further proceedings. I would reverse and declare error.

BROWN and THORNTON, JJ., join.

RAY THORNTON, Justice, dissenting in part and concurring in part. While I agree with the majority that the trial court erred in granting a directed verdict acquitting appellee of simultaneous possession of drugs and firearms, I respectfully disagree that appellee can be tried a second time for the same offense. He was put in jeopardy, found guilty of the crime of possession of a controlled substance and possession of drug paraphernalia, and sentence was imposed.

The Double Jeopardy Clause of the Fifth Amendment states: "[N]or shall any person be subject for the same offence [sic] to be twice put in jeopardy of life or limb." Article 2, § 8, of the Arkansas Constitution provides: "No person. . . shall be twice put in jeopardy of life or liberty. . . ."

Many of the general principles underlying the Double Jeopardy Clause are analyzed in *United States v. DiFrancesco,* 449 U.S. 117, (1980), where the Supreme Court notes that the guarantee against double jeopardy has been said

> to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

Around 10:00 in the morning of May 14, 1995, a Jacksonville Police Officer found appellee passed out or sleeping by a pay phone in front of a restaurant. After several attempts to awaken him, he identified himself, and the officer determined that there was an outstanding warrant for his arrest on hot check charges. The officer arrested and handcuffed appellee who volunteered that he had a handgun in his waistband, which the officer recovered, along with some drug paraphernalia, and 0.044 grams of methamphetamine and nicotinamide.

The State filed charges for violation of Ark. Code Ann. § 5-74-106 (Repl. 1993), simultaneous possession of drugs and firearms, and a second charge of violation of Ark. Code Ann. § 5-64-403 (Repl. 1993), possession of drug paraphernalia. Appellee waived his right to a trial by jury, and the trial took place on March 11,1996. After the State rested, appellee moved for a directed verdict because the State failed to prove that he intended to use the gun to protect his drugs, or further his delivery of drugs, specifically stating: "So, Judge what I am saying is that element is lacking and the state has failed to prove that element and it is required by law to be proven. Therefore, I would ask for the charge to be reduced to possession of a controlled substance, methamphetamine."

The trial court then granted the motion, basing its decision upon the legislative history of the statute as being related to gang activity, and found the appellee guilty of possession of methamphetamine and guilty of possession of drug paraphernalia. Sentence was imposed for these convictions.

We have previously addressed similar double jeopardy issues. In *Strickbine v. State*, 201 Ark. 1031, 148 S.W.2d 180 (1941), we held that a determination of guilt in an inferior court on a lesser included charge operates as implied acquittal of the greater offense barring any further proceedings on the greater offense that places the defendant's life or liberty in jeopardy. It should be noted that we were applying the Arkansas constitutional standard to this review. We have applied the same principle to a DWI second offense, and reversed the judgment of conviction in *Hagar v. City of Fort Smith*, 317 Ark. 209, 877 S.W.2d 908 (1994).

In *Brooks v. State*, 308 Ark. 660, 827 S.W.2d 119 (1992), we held that a trial court's granting of a motion to dismiss constituted a judgment of acquittal on the robbery charge, and that the action of the judge later in the same trial in reversing that ruling and submitting the robbery charge to the jury constituted double jeopardy. To the same effect are our decisions in *State v. Johnson*, 317 Ark. 226, 876 S.W.2d 577 (1994), and *State v. Young*, 315 Ark. 656, 869 S.W.2d 691 (1994).

While these decisions clearly reflect the rule that a conviction of a lesser included offense constitutes an acquittal of the greater offense, it is not essential that there be an acquittal in order for jeopardy to attach so that a second trial is prohibited. Wayne R. Lafave and Jerold H. Isreal, *Criminal Procedure* § 25.1(g)(7), at 1064 (2nd ed. 1992) states the following:

> If the jury reaches a verdict of acquittal or the judge grants a judgment of acquittal prior to jury verdict, double jeopardy bars a new trial even if it appears that the acquittal was based on an erroneous interpretation of the law. Included in the concept of an acquittal is the implied acquittal that comes when a jury returns a verdict of guilty on a lesser-included offense and fails to indicate its disposition of the higher charge.

In the case before us, jeopardy attached on the charge of simultaneous possession of drugs and firearms when the first witness was sworn. As stated in *United States v. Scott*, 437 U.S. 82 (1978), "a defendant once acquitted may not be again subjected to trial without violating the Double Jeopardy Clause."

In *Sanabria v. United States*, 437 U.S. 54 (1978), a case handed down on the same day as *Scott, supra,* the Supreme Court expanded upon the principle as follows:

> That "[a] verdict of acquittal . . . [may] not be reviewed . . . without putting [the defendant] twice in jeopardy, and thereby violating the Constitution," has recently been described as "the most fundamental rule in the history of double jeopardy jurisprudence." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977), quoting *United States v. Ball*, 163 U.S. 662, 671 (1896). The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is "based upon an egregiously erroneous foundation." *Fong Foo v. United States,*

> 369 U.S. 141, 143 (1962); *see Green v. United States*, 355 U.S. 184, 188 (1957). In *Fong Foo* the Court of Appeals held that the District Court had erred in various rulings and lacked power to direct a verdict of acquittal before the government rested its case. We accepted the Court of Appeals' holding that the District Court had erred, but nevertheless found that the Double Jeopardy Clause was "violated when the Court of Appeals set aside the judgment of acquittal and directed that petitioners be tried again for the same offense." *Fong Foo*, 369 U.S. at 143. Thus when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous.

*Id.* at 64.

In *Sanabria*, there were charges involving horse-betting and numbers violations, in a single gambling business. The defendant was acquitted on the horse-betting charge for insufficient evidence, and the numbers charge was dismissed. The First Circuit determined that the District Court had erred in "dismissing" the numbers theory, and remanded the case so that the defendant could be tried on the numbers charges. The Supreme Court reversed because retrial would violate the Double Jeopardy Clause, stating the following: "The Double Jeopardy Clause is not such a fragile guarantee that . . . its limitations [can be avoided] by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Id.* at 72 (quoting *Brown v. Ohio*, 432 U.S. 161, 169 (1977)).

Here, appellee committed one offense. He was found sleeping in a public place with a small quantity of drugs, paraphernalia, and a gun in his possession. Jeopardy attached on the offense of violating the provisions of Ark. Code Ann. § 5-74-106(a), when the first witness was sworn. Upon conclusion of the State's case, the court determined that a necessary element of proof had not been presented on the question of simultaneous possession, granted a motion to dismiss, and found appellee guilty of possession of drugs and drug paraphernalia.

Appellee was tried and convicted. Certainly jeopardy attached, and his conviction resulted in deprivation of liberty. To send the matter back for a new trial on the offense for which he

has already been in jeopardy violates the principles of the prohibition against double jeopardy. We should determine that the trial court committed error in granting the motion to dismiss but that the appellee cannot be retried. There was no appeal from the conviction and the sentence for possession, and of course that conviction and sentence remain fully effective.

It is my view that remanding the case for a new trial violates the prohibition against double jeopardy. We should declare error and reverse.

BROWN and IMBER, JJ., join.