Clarence MANNING *v.* STATE of Arkansas

CR 97-102

956 S.W.2d 184

Supreme Court of Arkansas
Opinion delivered December 4, 1997

*Christopher M. Jester*, for appellant.

*Winston Bryant*, Att'y Gen., by: *SC. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

RAY THORNTON, Justice. Clarence Manning, appellant, was convicted by bench trial of possession of a controlled substance with intent to deliver, possession of drug paraphernalia with intent to use, and simultaneous possession of drugs and a firearm. He appeals only the simultaneous possession conviction, arguing that, under the statutory defense, the guns found at his home were not "readily accessible for use." After careful consideration of the meaning of this phrase, we disagree, and affirm.

Manning was arrested and charged with the offenses after four police officers executed a search warrant at 216 East Word, in Jonesboro. When they entered the home, two men were seated in the living room, and four men, including Manning, were in the

kitchen. The police searched the house and found two guns wrapped in a black ski mask on the top shelf of the closet in the only bedroom. One gun was a Lorcin 9-millimeter pistol, which was loaded, and the other was an unloaded Smith & Wesson .38-caliber revolver. While in the bedroom, the police also found seventeen grams of rock cocaine in the pocket of a jacket hung in the closet, and about three grams of cocaine powder in the pocket of a pair of jeans in a dresser drawer. The police found drug paraphernalia in the kitchen. All parties concede that the house is very small. After determining that Manning lived in the house by himself, the trial court convicted him.

Under the Arkansas Criminal Gang, Organization, or Enterprise Act, "[n]o person shall unlawfully commit a felony violation of § 5-64-401 [Uniform Controlled Substances Act] . . . while in possession of . . . [a] firearm." Ark. Code Ann. § 5-74-106(a) (Repl. 1993). A person found guilty of this offense may be sentenced to prison for a term of ten to forty years, or life. *Id.* §§ 5-4-401(a)(1), 5-74-106(b). At trial, Manning raised the statutory defense that the "defendant was in his home and the firearm was not readily accessible for use." *Id.* § 5-74-106(d). The code does not define the phrase, "readily accessible for use."

The State argued that the accessibility of the guns should not turn on their proximity to the appellant at the moment of the officers' entry into the residence. The trial court agreed, stating that it should not make a difference in a defendant's guilt or innocence that he was in the room with the firearm or in another room. The court stated that the term "readily accessible for use" means more than "in close proximity to defendant." Instead, the court maintained that close proximity is just one factor among the several to be considered. The court noted that "it is inconceivable that the defendant would not be guilty if he was in the kitchen but guilty if he was in the bedroom."

On appeal, Manning contends that "the location of the guns is key." He seems to conclude that the firearm must be within the defendant's reach when he argues that the guns were not readily accessible because they were in a different room, wrapped in a ski mask, and one was unloaded.

■ Because our case law has not addressed the meaning of "readily accessible for use," we approach the issue by applying rules of statutory construction. First, we attempt to construe the statute "from the natural and obvious import of the language used by the legislature without resorting to subtle and forced construction for the purpose of limiting or extending the meaning." *City of North Little Rock v. Montgomery*, 261 Ark. 16, 18, 546 S.W.2d 154, 155 (1977). As a rule, criminal statutes are strictly construed with any doubts resolved in favor of the accused. *Puckett v. State*, 328 Ark. 355, 358, 944 S.W.2d 111, 113 (1997) (citations omitted). We have stated, however, that such statutes shall not be so strictly construed as to defeat the obvious intent of the legislature. *Id.* Thus, when the language of the statute is capable of two interpretations, its meaning is ambiguous and we are compelled to look to the intent and purpose of the General Assembly in enacting the statute. *First State Bank v. Arkansas State Banking Bd.*, 305 Ark. 220, 223, 806 S.W.2d 624, 626 (1991). Finally, to determine legislative intent, we look to appropriate sources that clarify the matter, including the language of the statute, the subject matter, the object to be accomplished, and the purpose to be served. *Bd. of Trustees v. Stodola*, 328 Ark. 194, 199, 942 S.W.2d 255, 257 (1997).

■ Manning's argument suggests that the plain meaning of the phrase, "readily accessible for use," is that the firearm must be "in close approximation to the defendant or within defendant's easy reach." The State construes the phrase according to dictionary definitions as "available to the defendant without much difficulty."[1] Both constructions have merit. Neither one can be said to force a construction that limits or extends the meaning of the phrase. In view of this ambiguity, we look to the legislative intent and purpose in enacting the statute to determine whether the construction urged by Manning would be consistent with that legislative intent.

---

[1] The dictionary definition of "readily" is "without much difficulty." WEBSTER's NINTH NEW COLLEGIATE DICTIONARY 980 (1987). "Accessible" means "capable of being reached." *Id.* at 48.

The General Assembly declares its intent and purposes of the Act in Ark. Code Ann. section 5-74-102, which is entitled, "General legislative findings, declarations, and intent." A fair reading of that section's provisions suggests that the General Assembly intended to address violence in the drug trade by making laws tougher on drug dealers who use firearms. The following statements are most pertinent to the simultaneous possession provision: (1) It is the right of every person "to be secure and protected from fear, intimidation, and physical harm caused by the activities of groups engaging in random crimes of violence, and committing crimes for profit and violent crimes committed to protect or control market areas or 'turf'"; (2) these groups are becoming "increasingly sophisticated at avoiding arrest and prosecution"; and (3) "one of the primary reasons for the increased homicide rate is the use of firearms by criminal gangs, organizations, or enterprises to control the crack cocaine market within their geographical 'turf.'" The legislative intent behind the Act is obvious in section 5-74-102(e) where the General Assembly said, "[i]t is furthermore the intent of the General Assembly to focus the state's law enforcement agencies and prosecutors on investigating and prosecuting all ongoing organized criminal activity and to provide for penalties that will punish and deter organized ongoing criminal activity." Ark. Code Ann. § 5-74-102(e) (Repl. 1993).

When addressing another issue, we construed the legislative intent of the Act in *State v. Zawodniak*, 329 Ark. 179, 946 S.W.2d 936 (1997). In that case, we said that the simultaneous possession statute "not only serves to deter organized gang and criminal activities, but also seeks the broader purpose to curtail any person's use of a firearm when that person is involved in the illegal trafficking in or possession of controlled substances." *Id*. at 182, 946 S.W.2d at 937.

█ The legislative intent informs us that there must be some link between the firearm and drugs, and that mere possession of a firearm is not enough. Despite this clear expression, the question remains whether the firearm must be proximate and accessible to the defendant, proximate to the drugs or drug proceeds, or some combination of the two. Here, however, we can determine that the Lorcin handgun was readily accessible for use

because the facts show that this proximity and accessibility test is met for both situations.

 In this case, there was evidence showing more than mere possession of a firearm in Manning's home. Manning had a loaded handgun, wrapped in a ski mask, near an abundant supply of illegal drugs, all within his easy reach. Given the legislative intent, we conclude that the factual circumstances are such in this case that the trial judge did not err when he determined that the Lorcin handgun was readily accessible for use.

Affirmed.