Alpatrick SHAW *v.* STATE of Arkansas

CA CR 98-527                    986 S.W.2d 129

Court of Appeals of Arkansas
Division III
Opinion delivered February 24, 1999

*David P. Price* and *Ben Seay*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen.; and *Sharon Taylor*, Law Student No. 335 Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the Supervision of *Kelly K. Hill*, Deputy Att'y Gen., for appellee.

A NDREE LAYTON ROAF, Judge. Alpatrick Shaw appeals the revocation of his suspended imposition of sentence that he had received pursuant to his April 15, 1996, guilty plea to robbery. His suspended sentence was conditioned upon his payment of court costs of $100 and a public-defender fee of $250, that he move out of state, and that he be of good behavior and refrain from criminal activity. Shaw argues that the trial court's decision to revoke based on his inexcusable failure to pay costs and his alleged delivery of a counterfeit controlled substance is clearly against the preponderance of the evidence. We hold that the trial court's finding that Shaw violated the good-behavior condition is not clearly against the preponderance of the evidence and affirm.

At the January 14, 1998, hearing on the revocation petition, Officer Johnny Hayes, assigned to the Thirteenth Judicial District Drug Task Force from the Magnolia Police Department, testified that undercover police officer Stacy James informed him that he had made a narcotics buy from an individual that he later identified as Shaw. Officer Hayes further testified that he received the suspected crack cocaine from Officer James and forwarded it to the State Crime Lab; however, due to the one-year backlog in cases, he did not have the results as of the time of the hearing.

Officer James testified that while posing as a drug buyer in Magnolia on July 8, 1997, he approached Shaw and another black male, who were standing on the corner of Booth and Couch Streets. Shaw invited Officer James to park his car at 416 Booth Street, which the officer did. After talking with the men for a time, Officer James received a page and asked how long they were going to be "balling," the street term for selling drugs. According to Officer James, Shaw told him that he would continue until he made a sale. At that point, Officer James told Shaw that he

wanted two "twenties," the street term for twenty dollars-worth of crack. Officer James gave Shaw two marked twenty-dollar bills, and Shaw instructed his associate to give Officer James two rocks out of his bag. Officer James stated that Shaw represented the rocks to be crack, and, based on his years of experience, the off-white rock-like substance appeared to him to be crack.

Testifying in his own defense, Shaw denied ever selling drugs, and in addition to offering his own testimony that he was in Chicago visiting one of his children on July 8, 1997, he introduced an affidavit from Anita Blackman of Chicago, that stated Shaw had visited her at her residence on July 4th, 6th, 8th, and 10th. Finally, Shaw claimed that Officer James was simply mistaken when he identified him as the person who sold him drugs. He claimed that his height, build, hair style, and "familiar face" make him easy to confuse with other people, that he is often told that he resembles rapper Snoop-Doggie-Dog, and in fact, while he was incarcerated at the Columbia County jail awaiting bail, he had two cell mates who fit his description. Shaw also denied knowing anyone who lived at 416 Booth Street.

Shaw's mother also testified in his case-in-chief. She confirmed that Shaw was in Chicago from the 4th to the 10th of July. On cross-examination, however, Shaw's mother stated that during 1997 she lived at 416 Booth Street, although at some point during the year, she moved.

The trial court found that Shaw violated the conditions of his suspended sentence by failing to pay his court costs and public defender fee and by "selling what was purported to be crack cocaine, at least representing it [sic]," but expressly declined to find that the failure to relocate was a basis for revocation. The trial judge also made a specific finding from the bench that she found Officer James's testimony credible and Shaw's not credible. The trial judge sentenced Shaw to eleven years in the Arkansas Department of Correction.

■ ■ To revoke a suspended sentence, a trial court must find by a preponderance of the evidence that the defendant has

inexcusably failed to comply with a condition of his suspension. Ark. Code Ann. § 5-4-309(d) (Repl. 1997). When appealing a revocation, the appellant has the burden of showing that the trial court's findings are against the preponderance of the evidence. *Ramsey v. State*, 60 Ark. App. 206, 959 S.W.2d 765 (1998). On appellate review, we uphold a revocation unless the trial court's findings are clearly against a preponderance of the evidence. *Id.*

Shaw argues that the trial court's decision to revoke based on his sale of what he represented to be crack cocaine was clearly against the preponderance of the evidence because the State failed to present either the substance in question or chemical analysis of it. He contends that because the State was attempting to prove that he committed the offense of delivery of a counterfeit substance, more than the testimony of Officers James and Hayes regarding its physical appearance was required by Ark. Code Ann. § 5-64-101(e) (Repl. 1997) to make a *prima facie* case. Shaw's argument has a certain degree of validity, as far as it goes.

Under Ark. Code Ann. § 5-64-401(b) (Repl. 1997), "it is unlawful for any person to create, deliver, or possess with intent to deliver, a counterfeit substance." Arkansas Code Annotated § 5-64-101 defines a counterfeit substance and the proof required to make out a *prima facie* case for qualifying a noncontrolled substance as a counterfeit substance as follows:

> (e) The term "counterfeit substance" means a noncontrolled substance, which by overall dosage unit appearance (including color, shape, size, markings, packaging, labeling, and overall appearance) or upon the basis of representations made to the recipient, purports to be a controlled substance or to have the physical or psychological effect associated with a controlled substance;

> In determining whether a substance is counterfeit, the following factors shall be utilized. A finding of any two (2) of these factors constitutes prima facie evidence that a substance is a "counterfeit substance":

(1) Statements made by an owner or by anyone else in control of the substance concerning the nature of the substance, or its use or effect;

(2) The physical appearance of the finished product containing the noncontrolled substance is substantially the same as that of a specific controlled substance;

(3) The noncontrolled substance is unpackaged or is packaged in a manner normally used for the illegal delivery of a controlled substance;

(4) The noncontrolled substance is not labeled in accordance with 21 U.S.C. § 352 or § 353;

(5) The person delivering, attempting to deliver, or causing delivery of the noncontrolled substance states or represents to the recipient that the noncontrolled substance may be resold at a price that substantially exceeds the value of the substance;

(6) Evasive tactics or actions utilized by the owner or person in control of the substance to avoid detection by law enforcement authorities;

(7) Prior convictions, if any, of an owner, or anyone in control of the object under state or federal laws related to controlled substances or fraud;

Under Ark. Code Ann. § 5-64-101(d), a controlled substance is defined as "a drug, substance, or immediate precursor in Schedules I through VI."

According to the above-referenced statutory sections, the offense of delivery of a counterfeit substance requires proof that the substance in question is a "noncontrolled substance." Because criminal statutes must be strictly construed, *see, e.g., Manning v. State*, 330 Ark. 699, 956 S.W.2d 184 (1997), failure to prove this element would certainly be fatal to this case if it was a criminal conviction. Because it is a revocation, however, a different analysis applies.

██ ██ First, it is well settled that evidence that is insufficient to support a criminal conviction may be sufficient to support

a revocation. *See, e.g., Ramsey v. State, supra.* Second, and more importantly, the condition of Shaw's suspended sentence that is at issue was a requirement of good behavior, which required that he "obey all Federal, State, local ordinances, and Court orders." Under the facts and circumstances of this case, we cannot say that it is clearly against the preponderance of the evidence that Shaw failed to obey all State laws. The substance that he sold to Officer James is either a controlled substance or a noncontrolled substance. If it is a controlled substance, Shaw violated Ark. Code Ann. § 5-64-401(a). If it is a noncontrolled substance, Shaw violated Ark. Code Ann. § 5-64-401(b).

In *Phillips v. State,* 40 Ark. App. 19, 840 S.W.2d 808 (1992), we upheld a revocation in spite of a Due Process challenge where the trial court, upon finding that chemical analysis revealed that the supposed drugs that were the subject of a delivery charge were not a controlled substance, dismissed the substantive case, and subsequently revoked probation based on delivery of a counterfeit substance. In *Phillips,* as in the instant case, the appellant had not claimed surprise or argued prejudice.

Because we find a sufficient basis to uphold the revocation on Shaw's violation of the good-behavior condition, we do not reach his argument concerning his nonpayment of his fees and court costs.

Affirmed.

MEADS and STROUD, JJ., agree.