George WILCOX *v.* STATE of Arkansas

CR 00-570                                    39 S.W.3d 434

Supreme Court of Arkansas
Opinion delivered October 18, 2000

*Sam T. Heuer*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. ■ Appellant George Wilcox appeals the interim order of the Pulaski County Circuit Court denying his motion to dismiss. For reversal, appellant argues that the State is barred by double jeopardy from retrying him on the charge of first-degree battery. The trial court's denial was affirmed by the Arkansas Court of Appeals in *Wilcox v. State*, 70 Ark. App. 110, 15 S.W.3d 353 (2000). This case is before us on petition for review; hence, our jurisdiction is pursuant to Ark. Sup. Cr. R. 1-2(e). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998).

Mr. Wilcox was convicted of battery in the first degree based upon charges that he shot Kenneth Thompson in the neck and foot on the night of June 16, 1997. Testimony elicited at trial established that, on the night of June 16, 1997, Kenneth Thompson, who was ten years old at the time of trial, was playing with his brother Eddie Withers (15) and his friends, Donald Ray Adams (15) and Keith Jackson (10) in a sod field owned by Mr. Wilcox and his wife. The boys testified that they were riding their bicycles in the

field, but lost one of the bicycles and turned on the lights of a tractor to locate it. At approximately 9:30 that evening, Mr. John Patton, who lived across the street from the field, heard the tractor running and the children's voices. He called the Wilcox home to notify Mr. Wilcox that there were children in the field playing with his equipment; then he went back outside and noticed a white Ford truck pulling into the field. Mr. Patton drove to the field himself and encountered the children leaving. They told him that the other man allowed them to leave, so Mr. Patton let them go as well and went to speak with the man who was standing in the field by the truck. They briefly discussed the possible damages done to the farm equipment, and then Mr. Patton left. Mr. Patton testified at trial that the man he spoke with in the field on June 16, 1997, was not in the courtroom.

According to the testimony of Eddie Withers, he and Keith Jackson hid behind a tractor as the white truck came into the field, but Kenneth Thompson and Ray Adams ran. Eddie testified that he saw a man get out of the truck with a gun and fire a shot at the ground. He also testified that he heard the man yelling for the running boys to come back to him. Ray obeyed and returned to face the man, but Kenneth continued to run. Eddie further testified that the man then aimed the gun at Kenneth and fired again. This time, Kenneth fell to the ground, got back up and ran again. When the man yelled again for him to come back, Kenneth complied. The shooter then told the boys to leave before he killed them. Ray placed Kenneth, who had been shot in the neck and foot, on the handlebars of his bicycle and took him home. Kenneth was transported to Arkansas Children's Hospital where he underwent surgery to remove a shotgun pellet from his neck.

Police officers investigating the incident went to the Wilcox home that evening and found a white Ford truck. It was muddy and the engine was warm, as if it had been driven recently. The officers also discovered golf tees inside the truck that matched two golf tees found at the scene of the shooting. Eddie Withers, who accompanied police to the Wilcox home, identified the truck as the one driven by the shooter. At trial, both Eddie Withers and Ray Adams identified Mr. Wilcox as the shooter. Mr. Wilcox denied the allegations, claiming that he was at home in bed when the events occurred and that he was awakened by the police.

Following a bench trial held on May 26, 1998, Mr. Wilcox was found guilty of battery in the first degree. Sentencing was postponed pending receipt of a presentence report. Prior to the date set for sentencing, Mr. Wilcox filed a motion for new trial based upon newly discovered evidence. He claimed to have evidence that Mr. Boyce Cope was the man who shot Kenneth Thompson. At a hearing on the motion, Mr. Patton, the eyewitness who had been unable to identify Mr. Wilcox at trial, testified that Mr. Cope was the man with whom he had spoken in the field on the night of June 16, 1997. Private investigator Keith Rounsavall testified about a conversation with Mr. Cope on July 6, 1998, in which Mr. Cope admitted that he was the man who shot Kenneth. The following day, Mr. Rounsavall taped Mr. Cope's confession. At the hearing, Mr. Cope invoked his Fifth Amendment privilege against self-incrimination and declined to testify, whereupon the trial court declared him unavailable as a witness and allowed the taped confession to be introduced into evidence. Mr. Wilcox also presented evidence concerning his eyesight. His optometrist testified that without his glasses Mr. Wilcox was able to see only at a level of 20/100. No witness at trial recalled seeing glasses on the man who shot Kenneth. Mr. Wilcox and his wife had both testified at trial that he wore his glasses everywhere.

The trial court granted Mr. Wilcox's motion for a new trial based upon newly discovered evidence. The presiding judge then recused, and the case was transferred to another division of Pulaski County Circuit Court for a new trial.

On June 8, 1999, Mr. Wilcox filed a motion to dismiss the charges against him on the basis of double jeopardy, or in the alternative for judgment of acquittal. He argued that allowing the State to proceed to trial a second time on the charges against Mr. Wilcox, in light of the newly discovered evidence before the court, would be a violation of the Fifth Amendment's prohibition against double jeopardy. Alternatively, Mr. Wilcox asked the court to exercise its inherent power to enter a judgment of acquittal based upon the record before it. The trial court denied the motion to dismiss in an order entered on June 17, 1999, but recognized Mr. Wilcox's right to appeal from the decision. A notice of appeal was filed on that same date.

Mr. Wilcox's sole point on appeal is that the State is barred from prosecuting him a second time in this matter. He argues that the trial court's grant of a new trial was "tantamount to directing a verdict of acquittal," because, in order to grant a new trial based upon newly discovered evidence, the trial court had to find that the new evidence would have impacted the outcome of the case. Mr. Wilcox asserts that the only impact that could occur under these circumstances is a judgment of acquittal based upon insufficient evidence. The State responds that in granting a new trial based upon newly discovered evidence, the trial court did not comment upon the sufficiency of the evidence; therefore, retrial is not barred by double jeopardy.

The Fifth Amendment to the United States Constitution provides that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. 5. See also Ark. Const. art. 2, § 8. The Arkansas General Assembly has reiterated this protection in two statutory provisions: Ark. Code Ann. § 5-1-112 (Repl. 1997) ("a former prosecution is an affirmative defense to a subsequent prosecution for the same offense" under certain specified circumstances) and Ark. Code Ann. § 16-85-712 (1987) ("an acquittal by a judgment on a verdict, or a conviction, shall bar another prosecution for the same offense").

"The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184 (1957).

■■ The Double Jeopardy Clauses of the United States and Arkansas constitutions protect criminal defendants from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S.

711 (1969); *Zawodniak v. State*, 339 Ark. 66, 3 S.W.3d 292 (1999). Where double jeopardy applies, "its sweep is absolute." *United States v. DiFrancesco*, 449 U.S. 117, 131 (1980) (quoting *Burks v. United States*, 437 U.S. 1 (1978)). However, the double jeopardy clause "imposes no limitation whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside." *Id.* at 131 (quoting *North Carolina v. Pearce, supra*) (emphasis original). There is only one exception to this rule: "the Double Jeopardy Clause prohibits retrial after a conviction has been reversed because of insufficiency of the evidence." *Id.* at 131; *see also Burks v. United States, supra*.

Mr. Wilcox argues that the State is barred from retrying him in the *instant* case because his original conviction has been overturned on the basis of insufficient evidence. If he is correct, then retrial is absolutely barred. *See United States v. DiFrancesco, supra*. We must therefore determine whether, by granting a new trial on the basis of newly discovered evidence, the trial court tacitly found the evidence insufficient to support a conviction.

In rendering its decision on Mr. Wilcox's motion for new trial, the trial court stated:

> "To prevail [on a motion for new trial based upon newly discovered evidence], the appellant must show that the new evidence would have impacted the outcome of his case and that he used due diligence in trying to discover the evidence." That also stands for the proposition that "newly-discovered evidence is the least favored ground for a new trial motion. When [the] new trial is denied on this ground, we will reverse only for an abuse of discretion," . . . [quoting *Misskelley v. State*, 323 Ark. 449, 478, 915 S.W.2d 702, 717 (1996)].
>
> In regard, and looking at some of the other cases around, such as *Brown versus State*, [330] Arkansas 627, a 1997 case, it states several things. Among the most important is, "[t]he mere fact that another person has confessed to a crime cannot alone be grounds for relief, for such confessions are not uncommon and must be approached with some skepticism. The trial court must carefully scrutinize the complete circumstances surrounding the confession and all the available evidence," which this Court has taken the an opportunity to do in the last several hours that we've been out. I've also considered other matters including the Rules of Evidence involving the admissibility of the statement or alleged confession in

> this matter, my trial notes of the trial in this matter, and the trial here. Even though a newly-discovered evidence is among the least favored grounds for the granting of a motion for new trial, the law provides for such relief under appropriate circumstances. After reviewing the facts presented here today and the prevailing law in Arkansas, the motion for new trial should be and is hereby granted.

It is clear from a review of the trial court's pronouncement from the bench that it made no explicit finding that the evidence was insufficient to convict Mr. Wilcox of battery in the first degree. Mr. Wilcox argues, however, that a finding by the trial court that the evidence was insufficient is inherent in its decision to grant a new trial, when viewed in light of the standards to which the trial court must adhere in granting a new trial based upon newly discovered evidence.

██ To prevail on a motion for new trial based upon newly discovered evidence, the movant "must show that the new evidence would have impacted the outcome of his case, and that he used due diligence in trying to discover the evidence." *Misskelley v. State*, 323 Ark. 449, 478, 915 S.W.2d 702, 717 (1996). The finding of due diligence is not at issue in this appeal. Mr. Wilcox argues that, because the trial court found that the newly discovered evidence would have impacted the outcome of his case, the trial court must have found the evidence insufficient to convict him. A finding of insufficient evidence to convict, according to Mr. Wilcox, is the only impact the evidence *could* have had on his case. In support of his argument, Mr. Wilcox relies upon the decision of the United States Supreme Court in *Greene v. Massey*, 437 U.S. 19 (1978).

In *Greene v. Massey*, the Florida Supreme Court had reversed the convictions of the defendants Greene and Sosa and remanded for a new trial after stating that "we are of the view that the evidence was definitely lacking [in] establishing beyond a reasonable doubt that the defendants committed murder in the first degree." *Id*. at 20-21. The United States Supreme Court noted that "by using the precise terminology 'lacking in establishing beyond a reasonable doubt,' the highest court in Florida seems to have clearly said that there was insufficient evidence to permit the jury to convict petitioner at his first trial." *Id*. at 25. The Supreme Court remanded the case to the Court of Appeals for reconsideration in light of *Burks v. United States, supra*, which had been decided the

same day.[1] *Id.* at 26-27. *Greene v. Massey*, however, is inapposite here. There has been no determination by any court that the evidence presented by the State in this case was insufficient to support the conviction of Mr. Wilcox.[2]

The Supreme Court, in *Burks v. United States*, explained its reasoning behind treating a finding of insufficient evidence like a verdict of acquittal for double jeopardy purposes:

> [A]n appellate reversal [on the grounds of insufficient evidence] means that the government's case was so lacking that it should not have even been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal - no matter how erroneous its decision - it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

*Burks v. United States*, 437 U.S. at 16 (emphasis in original). Similarly, in *State v. Zawodniak*, 329 Ark. 179, 946 S.W.2d 936 (1997), we stated that, to implicate double jeopardy, "the trial court's judgment must be one that indicates that the government's factual case has failed either as to the statutory elements of the offense charged, or as to the burden shifted to the government when a defendant raises a prima facie defense that, unrebutted, would justify a finding of innocence." *Id.* at 185, 946 S.W.2d at 939 (citing *United States v. Scott*, 437 U.S. 82 (1978)). Such is not the case here. The trial court never indicated that the State failed in its burden of proof as to the statutory elements of battery in the first degree; nor did Mr. Wilcox present any prima facie defense that, unrebutted, would justify a finding of innocence. To the contrary, the trial court made a finding that the evidence presented by the State was sufficient when it convicted Mr. Wilcox of the offense charged.[3]

---

[1] The Court noted that a retrial would "obviously" violate the Double Jeopardy Clause if only the quoted opinion were considered. The Court remanded the case for further consideration, however, because of the alignment of the Florida Supreme Court in its per curiam opinion. Although three justices concurred in the majority opinion finding insufficient evidence, they did not specifically address the sufficiency of the evidence in their concurring opinions; rather, they concurred based upon trial error. 437 U.S. at 25-26.

[2] Mr. Wilcox's reliance on *Freer v. Dugger*, 935 F.2d 213 (11th Cir. 1991), in his petition for review is similarly misplaced. In *Freer*, the trial court specifically discussed the evidence and stated that it was not satisfied that the State had proven guilt beyond a reasonable doubt. *Id.* at 216.

[3] At the time that Mr. Wilcox was tried, the legal sufficiency of the evidence was

■ The instant case is more analogous to *Tibbs v. Florida*, 457 U.S. 31 (1982), wherein the Supreme Court reiterated that "the Double Jeopardy Clause precludes retrial once the reviewing court has found the evidence legally insufficient to support conviction." *Id.* at 40-41 (internal quotation omitted). However, the Supreme Court noted that the rule barring retrial is confined only to those cases where the failure of the State to present sufficient evidence is clear. *Id.* at 41. The prohibition against double jeopardy does not bar retrial when a conviction is overturned based upon the weight of the evidence. "[R]eversal on this ground, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." *Id.* at 42. Rather, "[a] reversal based on the weight of the evidence . . . can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the [finder of fact] to convict." *Id.* at 42-43.

> [T]he Double Jeopardy Clause . . . should not exact the price of immunity for every defendant who persuades an appellate panel to overturn an error-free conviction and give him a second chance at acquittal. Giving the defendant this second opportunity, when the evidence is sufficient to support the first verdict, hardly amounts to 'governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect.'

*Id.* at 44 (quoting *United States v. Scott*, 437 U.S. at 91). This court has adopted the language of *Tibbs* when distinguishing between the weight and the sufficiency of evidence in reviewing directed verdicts. *See State v. Johnson*, 326 Ark. 189, 931 S.W.2d 760 (1996); *State v. Long*, 311 Ark. 248, 844 S.W.2d 302 (1992).

■ We cannot say that the trial court's determination that a new trial was warranted in light of Mr. Wilcox's newly discovered evidence was equivalent to a finding that the State's case was so lacking that it should not have even been submitted to a jury. As the State argues, the trial court necessarily determined that the evidence presented by the State at trial was sufficient to convict because the trial court, sitting as trier of fact, entered a judgment of

necessarily considered by the trial court in a bench trial without regard to whether or when Mr. Wilcox raised the issue. *Strickland v. State*, 322 Ark. 312, 314-18, 909 S.W.2d 318, 319-21 (1995). *Strickland* has now been superceded by this court's amendment to Ark. R. Crim. P. 33.1, which requires a dismissal motion in a nonjury trial. Ark. R. Crim. P. 33.1(b) (amended by *per curiam* order dated April 6, 1999).

conviction. It certainly was not implicit in the trial court's granting of a new trial that the State's evidence had been rendered legally insufficient due to Mr. Wilcox's newly discovered evidence. At most, the trial court's grant of a new trial does nothing more than indicate that the new evidence would have impacted the outcome of the case only if a factfinder, after resolving questions of credibility and conflicting testimony, were to determine that the weight of the evidence supported an acquittal.

The grant of a new trial in this case simply provided Mr. Wilcox with "a second opportunity to seek a favorable judgment." *Tibbs v. Florida*, 457 U.S. at 43. On retrial, it will be for the factfinder to determine the weight of the evidence; that is, whether a greater amount of credible evidence supports an acquittal or a conviction. *State v. Johnson, supra; State v. Long, supra.* Accordingly, we hold that the trial court properly denied Mr. Wilcox's motion to dismiss on the basis of double jeopardy.

Affirmed.