The Honorable Doyle Webb State Senator P.O. Box 1998 Benton, Arkansas 72018-1998
Dear Senator Webb:
You have requested an official Attorney General opinion concerning the City of Alexander's ability to establish a municipal court.
You indicate that the Alexander Municipal Court was originally established by ordinance in 1977, but was designated in the ordinance as a "City Court." Despite this designation, the ordinance established the jurisdiction of a municipal court, including a civil docket. In 1992, another ordinance was passed by the city in an attempt to clarify the situation. This ordinance purported to create a municipal court pursuant to A.C.A. § 16-17-501. Then in 1996, the name of the court was once again changed by ordinance in 1996. At that time, the name of the court was changed back to the Alexander City Court, but the ordinance purported to retain countywide jurisdiction, which is available only for municipal courts.
In light of this situation, you have presented the following questions:
 (1) Did the City of Alexander legally establish a municipal court prior to 1985, since at that time it maintained county-wide jurisdiction and kept a civil docket, neither of which would have been possible with a city court?
 (2) Does the City of Alexander qualify to establish a municipal court under A.C.A. § 16-17-501?
 (3) Is it legally possible for a city to maintain both a municipal court and a city court?
RESPONSE
Question 1 — Did the City of Alexander legally establish a municipalcourt prior to 1985, since at that time it maintained county-widejurisdiction and kept a civil docket, neither of which would have beenpossible with a city court?
I am unable to opine in response to this question. In order to determine the effect of the 1977 ordinance, it would be essential not only to review the ordinance itself, but also to ascertain the intent of the council that enacted the ordinance. These are functions that the Attorney General is not authorized to undertake. Only a court can ultimately determine such matters.
Nevertheless, I will point out several rules of legislative construction that should impact upon the ultimate decision. First, in determining the intent of lawmakers, the courts are required to look to the whole act, rather than to isolated words or sections. See Kifer v. Liberty Mut.Ins. Co. 777 F.2d 1325 (1985); Elizabeth Arden Sales Corp. v. Gus BlassCo., 150 F.2d 988, cert. denied 326 U.S. 773 (1945). The intent that is reflected by the act as a whole should take precedence over any intent reflected by isolated words or sections. Id. In addition, it has been held that unnecessary or contradictory clauses in acts should be deleted and disregarded in order to give effect to the clear legislative intent.City of Fort Smith v. Tate, 38 Ark. App. 172 832 S.W.2d 262 (1992). In this regard, the Arkansas Supreme Court has held that drafting errors should not be allowed to circumvent legislative intent. Citizens toEstablish a Reform Party in Arkansas v. Priest, 235 Ark. 257,926 S.W.2d 432 (1996). Moreover, the courts may correct errors by rejecting certain words and substituting others to reconcile apparent inconsistencies.Dooley v. Hot Springs Family YMCA, 301 Ark. 23, 781 S.W.2d 457 (1989). Similarly, the court has held that courts should construe legislative language from the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of limiting or extending the meaning. Manning v. State, 330 Ark. 699, 956 S.W.2d 184
(1997). Finally, the court has held that in determining legislative intent in order to construe an act, the reason and spirit of the act should take precedence over the letter of the act, where adherence to the letter of the act would result in an absurdity or would defeat the plain purpose of the law. Williams v. City of Pine Bluff, 284 Ark. 551,683 S.W.2d 923 (1985).
All of these rules of legislative interpretation should be considered in determining the intent of the city council that enacted the 1977 ordinance creating a "city court," but giving it the jurisdiction of a municipal court. I reiterate that I cannot make any determination concerning that council's intent. However, I note the possibility that under the above-referenced rules of interpretation, a finder of fact could conclude that the jurisdictional language in the ordinance should take precedence over the technical designation "city court" as an indicator of the council's intent. Nevertheless, other factors considered by the finder of fact might indicate otherwise.
Question 2 — Does the City of Alexander qualify to establish a municipalcourt under A.C.A. § 16-17-501?
The provisions of A.C.A. § 16-17-501 state:
 Any city with a population of less than three thousand (3,000) persons, according to any federal census, which had a municipal court in existence on March 4, 1985, may create a municipal court under this subchapter.
A.C.A. § 16-17-501.
Under the above-quoted statute, Alexander's ability to establish a municipal court under A.C.A. § 16-17-501 depends upon whether the 1977 ordinance had the effect of creating a municipal court. Therefore, the answer to this question will depend upon the answer to Question 1. As indicated previously, the Attorney General cannot answer Question 1. For this reason, I am unable to respond to Question 2.
Question 3 — Is it legally possible for a city to maintain both amunicipal court and a city court?
I am aware of no legal impediments to the maintenance by a city of the second class, such as Alexander, of both a municipal court and a city court. Cities of the second class are authorized to create both city courts (see A.C.A. § 14-44-108) and municipal courts (see A.C.A. § 16-17-204). The law authorizing the creation of each of these courts does not limit their creation to cities that have not already created the other type of court. Moreover, the fact that these courts are granted concurrent jurisdiction over certain matters, yet differing jurisdiction over other matters (see A.C.A. §§ 16-17-704; 16-88-101) contemplates the possibility that the two courts could co-exist in the same city. My conclusion regarding this matter is supported by my previous opinion that a city judge can simultaneously serve as municipal judge. See Op. Att'y Gen. No. 90-294.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SBA/cyh