The Honorable Tommy Dickinson State Representative 711 Hodges Street Newport, AR 72112-2709
Dear Representative Dickinson:
I am writing in response to your request for my opinion on the following question:
 May an Arkansas rural electric cooperative corporation that is not a member of a generation or transmission cooperative participate in an interlocal agreement with Arkansas municipal electric utilities to form an Arkansas Municipal Electric Utility Consolidated Authority (AMECA)?
You have recited the following background information giving rise to your question:
 In the most recent session of the Arkansas General Assembly, the Arkansas Legislature passed The Arkansas Municipal Electric Utility Interlocal Cooperation Act of 2003. Arkansas Act 366 of 2003 codified at ACA 25-20-401 et seq. The purpose of Act 366 was to allow municipal electric utilities to form an electric joint action agency. The joint action agency is to exist as a separate entity and will be known as an Arkansas Municipal Electric Utility Consolidated Authority (AMECA).
 Membership in the AMECA is not limited to Arkansas municipal electric utilities. A rural electric corporation that is not a member of a generation or transmission cooperative or a municipal electric utility system in another state may join the formation of an AMECA. ACA 25-25-403(a)(2).
 Act 366 requires the utilities forming an AMECA to enter into an interlocal agreement under the Interlocal Cooperation Act, ACA 25-20-101 et seq. 25-20-403. Under the Interlocal Cooperation Act the authority to enter into an interlocal agreement is established in ACA 25-20-104(b) wherein it states that any two (2) or more public agencies may enter into agreements with one another for joint cooperative action pursuant to the provision of this chapter. The definition of a public agency prior to Act 366 did not include a rural electric corporation. Accordingly, a rural electric corporation could not have participated in an interlocal agreement.
To allow for a rural electric corporation's participation in an interlocal agreement and in turn an AMECA, Section 2. of Act 366 amended ACA 25-20-103 to read as follows:
25-20-103. Definitions.
As use[d] in this chapter, unless the context otherwise requires:
 (1) "Public agency" means any school district, any political Subdivision of this state, any agency of the state government of the United States, and political subdivision of another state, water districts created under the provisions of the Regional Water Distribution Act, Arkansas Code 14-116-101 et seq., governing bodies of municipal electric utilities as defined in 25-20-402, and fire departments organized under the laws of this state if the fire departments offer fire protection services to unincorporated areas and have received approval by their quorum court for participation in an interlocal cooperation agreement; and
 (2) "state["] means a state of the United States and the District of Columbia.
ACA 25-20-103.
 Within Act 366 a "governing body of a municipal electric utility" is defined as the city council, board of directors, improvement district commissioners, or other elected or appointed authority have the rate-making and debt-issuance authority for the municipal electric utility. ACA 25-20-402(a). A "municipal electric utility" is defined as any electric generation, transmission, or distribution system owned or operated on July 16, 2003, by any city of the first class or city of the second class, or a town incorporated under the laws of the State of Arkansas or any commission department, division or agency thereof, including any municipally owned or municipally controlled corporation, improvement district, consolidated public or municipal utility system improvement district, or nonprofit corporation lessee of such an entity. ACA 25-20-402(6).
Against this backdrop, you define the issue as being the following:
 ACA 25-20-403(a)(2) clearly states that a rural electric cooperative corporation that is not a member of a generation or transmission cooperative may join in the formation of an AMECA. However, the language in Section 2 of Act 366 amending ACA 25-20-103 to include a rural electric corporation that is not a member of a generation or transmission cooperative appears to be ineffective since the definition of a governing body of a municipal electric utility in ACA 25-20-402(4) does not include such a rural electric corporation.
RESPONSE
Although the pertinent legislation is confusing and would benefit from legislative clarification, I believe an Arkansas rural electric cooperative corporation that is not a member of a generation or transmission cooperative may participate in an interlocal agreement with Arkansas municipal electric utilities to form an Arkansas Municipal Electric Utility Consolidated Authority (an "AMECA").
A "rural electric cooperative corporation" is an entity formed pursuant to the Electric Cooperative Corporation Act, A.C.A. § 23-18-301 et seq.
(Repl. 2002 Supp. 2003), that provides electricity to its primarily rural members subject to regulation by the Arkansas Public Service Commission (the "APSC") "to the same extent and in the same manner as a public utility, except as otherwise specifically provided by law." See
A.C.A. § 23-18-308. Although the Code does not directly define the term "generation or transmission cooperative," this term refers to entities that generate and provide electricity at wholesale rates to retail distributors. See Arkansas Electric Cooperative Corporation v. ArkansasPublic Service Commission, 461 U.S. 375 (1983) (holding that the AECC, as a wholesale provider of electricity to its members, could be subjected to APSC regulation without offending either the commerce clause or the supremacy clause of the United States Constitution). As was the case with the AECC, a rural electric cooperative corporation that sells electricity to its members at retail may also generate and sell electricity at wholesale to its member retailers, with both categories of sale subject to APSC regulation. Id. See A.C.A. § 23-18-106 (Supp. 2003) (providing that if an electric cooperative corporation purchases electricity at wholesale from an "electric generation and transmission cooperative," only the latter's "comprehensive resource planning" and acquisition of "electric energy, capacity, and generation assets" will be subject to APSC review and approval procedures).
As you note in your request, the Arkansas Municipal Electric Utility Interlocal Cooperation Act of 2003, enacted by Acts 2003, No. 366, § 1 and codified at A.C.A. § 25-20-401 et seq. (Supp. 2003), provides for the formation by interlocal agreement under the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq. (Repl. 2002 Supp. 2003), of an AMECA comprising "any two (2) or more municipal electric utilities." A.C.A. §§25-20-402(1) and -403(a)(1). Subsection 25-20-402(6) defines the term "municipal electric utility" as follows:
 "Municipal electric utility" means any electric generation, transmission, or distribution system owned or operated on July 16, 2003 by any city of the first class, city of the second class, or a town incorporated under the laws of the State of Arkansas or any commission, department, division, or agency thereof, including any municipally owned or municipally controlled corporation, improvement district, consolidated public or municipal utility system improvement district, or nonprofit corporation lessee of such an entity[.]
Although this definition would not appear to include any category of rural electric cooperative corporation, A.C.A. § 25-20-403(a)(2) authorizes the following additional participation in an AMECA:
 For the purposes of this section, a rural electric cooperative corporation that is not a member of a generation or transmission cooperative or a municipal electric utility system in another state may join in the formation of an authority.[1]
 It appears clear, then, that the legislature intended any rural electric cooperative corporation that is not a member of a generation or transmission cooperative to be eligible to participate by interlocal agreement in an AMECA.
However, as you further note in your request, a problem exists inasmuch as the Interlocal Cooperation Act, as amended by Acts 2003, No. 366, § 2, does not in itself authorize a rural electric cooperative that is not a member of a generation or transmission cooperative to participate in an interlocal agreement. Subsection 25-20-104(b) provides in pertinent part: "Any two (2) or more public agencies may enter into agreements with one another for joint cooperative action pursuant to the provisions of this chapter." In an apparent effort to include authorized parties to an AMECA agreement within the definition of "public agency" in the Interlocal Cooperation Act, the legislature in Act 366 amended the definition by adding the following subsection to A.C.A. § 25-20-103:
(1) "Public agency" means any:
* * *
 (F) Governing body of a municipal electric utility as defined in § 25-20-402[.]
The problem you have identified is that, as noted above, the definition of "municipal electric utility" set forth at A.C.A. § 25-20-402(6) does not include a rural electric cooperative that is not a member of a generation or transmission cooperative; however, as likewise noted above, such a cooperative is independently authorized to participate in an AMECA agreement by A.C.A. § 25-20-403(a)(2), which was enacted pursuant to Act 366, § 1. The question arises, then, whether a rural electric cooperative that is not a member of a generation or transmission cooperative is authorized to enter into an interlocal agreement pursuant to the Interlocal Cooperation Act, which A.C.A. § 26-20-403(a)(1) expressly identifies as the appropriate course to create an AMECA.
If at all possible, I am obliged to reconcile the apparent tensions in the legislation discussed above. In attempting to resolve these conflicts I am guided by various principles of statutory construction. First, legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993); City ofFort Smith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). This is especially so in the case of acts passed during the same session of the General Assembly. Uilkie v. State,309 Ark. 48, 827 S.W.2d 131(1992); Love v. Hill, 297 Ark. 96, 759 S.W.2d 550
(1988). When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other. Donoho, 318 Ark. 637; WardSchool Bus Mfg., Inc. v. Fowler, 261 Ark. 100, 547 S.W.2d 394 (1977).
Moreover, in determining the intent of lawmakers, the courts are required to look to the whole act, rather than to isolated words or sections. SeeKifer v. Liberty Mut. Ins. Co., 777 F.2d 1325 (8th Cir. 1986);Elizabeth Arden Sales Corp. v. Gus Blass Co., 150 F.2d 988, cert. denied326 U.S. 773 (1945). The intent that is reflected by the act as a whole should take precedence over any intent reflected by isolated words or sections. Id. In addition, it has been held that unnecessary or contradictory clauses in acts should be deleted and disregarded in order to give effect to the clear legislative intent. City of Fort Smith v.Tate, 38 Ark. App. 172, 832 S.W.2d 262 (1992). In this regard, the Arkansas Supreme Court has held that drafting errors should not be allowed to circumvent legislative intent. Citizens to Establish a ReformParty in Arkansas v. Priest, 235 Ark. 257, 926 S.W.2d 432 (1996). Moreover, the courts may correct errors by rejecting certain words and substituting others to reconcile apparent inconsistencies. Dooley v. HotSprings Family YMCA, 301 Ark. 23, 781 S.W.2d 457 (1989). Similarly, the court has held that courts should construe legislative language from the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of limiting or extending the meaning. Manning v. State, 330 Ark. 699, 956 S.W.2d 184 (1997). Finally, the court has held that in determining legislative intent in order to construe an act, the reason and spirit of the act should take precedence over the letter of the act, where adherence to the letter of the act would result in an absurdity or would defeat the plain purpose of the law. Williams v. City of Pine Bluff, 284 Ark. 551, 683 S.W.2d 923
(1985).
Applying these principles, I believe the legislature clearly intended to authorize a rural electric cooperative that is not a member of a generation or transmission cooperative to participate in an interlocal agreement creating an AMECA. Subsection 25-20-403(a)(2), which was enacted pursuant to Act 366, § 1, is absolutely unambiguous in declaring as much. By contrast, I believe it is quite likely through inadvertency that the legislature, in drafting Act 366, § 2 to conform the Interlocal Cooperation Act to the newly enacted Arkansas Municipal Electric Utility Interlocal Cooperation Act, failed to include a rural electric cooperative that is not a member of a generation or transmission cooperative in the amended definition of a "public agency" authorized to enter into an interlocal agreement. As noted above, A.C.A. §25-20-403(a)(1) references only "municipal electric utilities" as authorized parties to an interlocal agreement; in what might be considered an unfortunate exercise in drafting, the legislation authorizing a rural electric cooperative that is not a member of a generation or transmission cooperative to likewise participate in an interlocal agreement establishing an AMECA is codified separately as A.C.A. § 25-20-403(a)(2). It appears that the drafters simply overlooked this second provision in amending A.C.A. § 25-20-403(a)(1), including in their revision of the term "public agency" only those entities expressly mentioned in the subsection that expressly mentions the Interlocal Cooperation Act as the procedural avenue to be followed in creating an AMECA. In my opinion, then, A.C.A. § 25-20-103(F) should be read more broadly than its literal language suggests, adding to the category of "public agency" not only the "[g]overning body of a municipal electric utility as defined in § 25-20-402," but also "a rural electric cooperative that is not a member of a generation or transmission cooperative" as referenced in A.C.A. § 25-20-403(a)(2).
I will note that I would have opined that a rural electric cooperative that is not a member of a generation or transmission cooperative might participate through interlocal agreement in an AMECA even if I had not concluded that the context of sections 1 and 2 of Act 366 warrants reading such authorization into A.C.A. § 25-20-103(F). It is generally held, in the construction of statutes, that a general statute or legislative provision does not apply where there is a specific statute or provision governing a particular subject matter. See Board of Trustees v.Stodola, 328 Ark. 194, 942 S.W.2d 255 (1997); Donoho v. Donoho,318 Ark. 637, 887 S.W.2d 290 (1994); Sunbelt Courier v. McCartney,31 Ark. App. 8, 786 S.W.2d 121 (1990), aff'd 303 Ark. 522, 798 S.W.2d 92
(1990); Thomas v. Easley, 277 Ark. 222, 640 S.W.2d 797 (1982). In the present case, the Interlocal Cooperation Act applies only generally to interlocal agreements between or among "public agencies." By contrast, the Arkansas Municipal Electric Utility Interlocal Cooperation Act applies expressly to interlocal agreements whereby AMECAs may be formed. Even assuming a rural electric cooperative that is not a member of a generation or transmission cooperative does not qualify to enter into an interlocal agreement under the general provisions of the Interlocal Cooperation Act, it clearly does qualify under the more specific terms of A.C.A. §25-20-403(a)(2), which declares point-blank that such a cooperative "may join in the formation" of an AMECA.
Having offered this opinion, I feel obliged to note that the definition of "public agency" set forth at A.C.A. § 25-20-103(1)(F) is misleading and invites legislative clarification.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] I recognize that the syntax of this statute might support reading the conditional language "in another state" as modifying both "a rural electric cooperative corporation that is not a member of a generation or transmission cooperative" and "a municipal electric utility system." However, I believe the term "in another state" modifies only the latter. This reading of the statute is consistent with the rule of statutory construction known as the "last antecedent doctrine," which provides that qualifying words will ordinarily be construed to apply only to the immediately preceding word or phrase. McCoy v. Walker, 317 Ark. 86,876 S.W.2d 252 (1994). This rule of statutory construction is discussed in 2A Sutherland, Statutory Construction § 47.33 (4th ed. 1984) as follows:
 Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.
See generally 82 C.J.S. § 333 (1999).